**UNITED STATES of America**
v.
**Walter E. ASHE, Appellant.**
**No. 22654.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 23, 1970.

Decided May 12, 1970.

Mr. John C. Smuck, Washington, D. C., with whom Mr. Cecil A. Beasley, Jr., Washington, D. C. (both appointed by this court) was on the brief, for appellant.

Mr. Roger E. Zuckerman, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., and John A. Terry, Asst. U. S. Atty., were on the brief, for appellee. Mr. David G. Bress, U. S. Atty., at the time the record was filed, also entered an appearance for appellee.

Before LEVENTHAL, ROBINSON and ROBB, Circuit Judges.

PER CURIAM.

This is an appeal of appellant's conviction under an indictment charging him with carnal knowledge of his ten year old daughter. Appellant's contentions relate to the sufficiency of the evidence and to the procedures by which the defense of insanity, raised by the court over the personal objection of appellant, was presented to the jury.

Our review of the record reveals that this was indeed a very close case with respect to the sufficiency of the required evidence of corroboration of the elements of the offense.

The Government's case against appellant rested primarily on the testimony of the complainant and her nine year old brother. Appellant's wife, the mother of the complainant, invoked her marital privilege and did not testify. The complainant gave straightforward testimony, but only after persistent questioning by the prosecutor. Indeed, when first called to the stand she failed to testify to any sexual relationship with appellant; she gave this testimony incriminating defendant only after she had been recalled, made aware of the presence of the investigating police officer in the courtroom, and permitted to read over to herself the statement that she had given to this officer. Moreover, her prior account, which she gave to a policewoman shortly after the alleged offense, was that her father had not bothered her.

The brother was called by the Government as an eyewitness to the alleged offense. Before he testified the trial judge properly conducted an interview in chambers, in the presence of counsel and court reporter, to determine whether the 9

year old was competent to testify. We are disturbed, however, because the questioning was almost casual, and the questions were leading. The deficiency is underscored by the fact another district judge had already declared a mistrial, after a jury had been sworn in this case, due to the problems raised by this witness's competency (JA 69).

Turning to the brother's testimony at trial, it is riddled with confusion about just what he saw and when he saw it. We do not see any specific corroboration of the nighttime episode described by the daughter complainant. His testimony concerning an incident occurring first before his father moved out of the house was that his father was on top of his sister while she was on her stomach. This does not amount to corroboration of an incident of carnal knowledge. He did give testimony which can be taken as relating a pattern of events of intercourse by defendant with his daughter. There is a difficulty with using that testimony as corroboration since it contradicts the testimony of complainant that there was only one act of intercourse.

The Government argues that even though the two lines of testimony are inconsistent they are in an ultimate sense reinforcing. Passing this problem we are confronted with the more basic difficulty that his testimony is so undercut by his misunderstanding of questions, and his inability to relate a comprehensible narrative, that it is with the greatest reluctance and uneasiness, if at all, that a court could rely on this scattered testimony as satisfying the rule requiring independent corroboration. We have set out in the footnote portions of his testimony illustrative of some of these deficiencies.[1]

The need for corroboration cannot be dispensed with simply because this is a case of incest. We appreciate the Government's position that as a practical matter corroboration is difficult to establish as to an intra-family sex crime. We conclude on reflection that the reasons for the rule requiring corroboration as to sex crimes,[2] a rule turning in the last analysis on the possibilities of distortion and misrepresentation, are present for crimes like incest, particularly if account is taken of the complexity and in-

---

1. Q. Now did you * * * at any time see both of them on the bed?
A. I was out in the back yard (Tr. 316).
* * * * *
Q. Now where was your sister when he said "Come here?"
A. I don't know where she was.
Q. Did you see her when he said "Come here?"
A. Yes.
Q. Where was she then?
A. In the front room.
Q. Did you see her move?
A. Yes.
Q. Did you see her go from one place to another in the front room or around the front room?
A. Place to another.
Q. Pardon?
A. She went from the place to another.
Q. Where did you see her go?
A. She went—
THE COURT: Will you tell us again? We didn't understand you.
THE WITNESS: She went in the back room and then she came back—
THE COURT: [A]re you still talking about the same time or another time?

THE WITNESS: Another (Tr. 321).
* * * * *
Q. I will ask you * * * then how many times have you seen this happen with your father and your sister?
A. Seven.
THE COURT: Did you say seven?
BY MR. MILLER:
Q. Did you say seven?
A. Yes.
Q. How many times of those were at night?
A. Eleven.
Q. Eleven?
A. Yes.
Q. Now when you saw your father on top of your sister as you have told us about, where were you then, in the apartment or outside?
A. Outside.
Q. And how did you see this, your father on top of your sister?
A. I didn't see it (Tr. 335).

2. Ewing v. United States, 77 U.S.App. D.C. 14, 135 F.2d 633 (1942), cert. denied 318 U.S. 776, 63 S.Ct. 829, 87 L.Ed. 1145 (1943).

tensity inherent in familial relationships, including the problems of divided loyalties.

A more troublesome question is raised by prosecution's claim that there was corroboration in the fact that the complainant's hymen was perforated. The inference that the hymen was perforated by an act of sexual intercourse is speculative. And in the nature of things there could be no establishment of the time of perforation.

■ However, we need not decide the vexing question of whether the prosecution evidence was sufficient to go to the jury. The most that could be said for that evidence is that it was a very "thin" case. In that context, and taking into account the firm position of the defendant on the issue of insanity raised by the court (defendant did not want this defense presented and told the trial court that an insanity defense would prejudice his quite substantial case on the

merits), we cannot overlook the impact of the testimony given by the psychiatrist, Dr. Morris Platkin of St. Elizabeths Hospital, on the issue of insanity. In this trial it was that psychiatric testimony that provided, in the apt words of defense appellate counsel, the really strong "corroboration" for the prosecution. He testified that the defendant was not improbably capable of the acts charged, that these were consistent with his condition (which had organic features with sexual deviation), and that the defendant's selection of his daughter is explainable on the ground of convenience.[3]

■ The trial judge was correct in investigating the issue of insanity and in saying that the court would take the burden of raising this defense off the shoulders of defense trial counsel. Whalem v. United States, 120 U.S.App.D.C. 331, 337, 346 F.2d 812, 818 (1965). But in taking on that obligation in the circumstances of this case the trial judge assumed the

3. The substantial possibility that the psychiatric testimony would be damaging to the defense on the merits was foreshadowed by the reference to "sexual deviation" as part of defendant's mental condition in the report rendered following commitment for pre-trial mental examination.

On October 19, 1967 appellant was committed to Saint Elizabeths Hospital for mental observation and examination. A letter from Dr. David Harris, Acting Superintendent dated December 15, 1967, states that appellant "is suffering from a Passive-Aggressive Personality, With Chronic Alcoholism, With Organic Features, and Sexual Deviation, at the present time and was so suffering on or about the time of the alleged criminal offense, and this offense, if committed by him, was causally related to the aforementioned personality disorder." Appellant was again committed to Saint Elizabeths on May 13, and a letter from Dr. Harris dated July 15, 1968, finds appellant's condition to be essentially the same and reiterates the conclusions of the earlier letter. In the second letter the final words "personality disorder" are replaced by "mental disease"—without indication of any significance in this change. Dr. Platkin testified that he examined appellant on December 13, 1967.

The St. Elizabeths examination properly extended to issues of mental responsi-

bility even though in terms the D.C.Code (§ 24–301) and court order referred only to competency to stand trial. Winn v. United States, 106 U.S.App.D.C. 133, 270 F.2d 326 (1959) ; Calloway v. United States, 106 U.S.App.D.C. 141, 270 F.2d 334 (1959). The problem of assuring trial testimony that permits experts to use meaningful medical language but leaves the ultimate legal determination to the court and jury is discussed in Washington v. United States, 129 U.S.App.D.C. 29, 390 F.2d 444 (1967). These reports alerted the trial judge to the possible existence of exculpatory mental disease or defect. Although the trial transcript discloses some questioning in terms of labels—whether this was a "disorder," a "defect," or a "disease"—we are satisfied that the testimony did present meaningfully to the jury the ultimate issues of effect on emotional processes and behavior controls. This was in accordance with the guidelines set forth in Washington v. United States, *supra*.

Since in our view the case as submitted wrought undue prejudice to the defense on the merits, we have not considered the issue whether the combination of the two defenses for simultaneous consideration was also objectionable as failing to provide a sound and fair context for consideration of the insanity defense.

corollary burden of assuring that the issue would be presented and considered in a way that would not prejudice the defendant's substantial defense on the merits.

■ A sound approach might well be to hear at least the essentials of the testimony of the witness in the first instance outside the presence of the jury, in order to assess the problem. In the case at bar, at least one remedy available to the judge was the procedure of a bifurcated trial, which has been approved by this court[4] and has been applied in trials in the District Court. Under this procedure evidence of insanity could have been reserved until the jury had first decided the issue of guilt or innocence apart from the defense of insanity and returned either a verdict of not guilty, which would stand as a general verdict, or a verdict of guilty beyond a reasonable doubt, which would constitute a special verdict pending consideration of the insanity issue. Neither this nor any other protective procedures was invoked by the judge.

■■ The mere fact that the insanity defense is raised by the court over the objection of the defendant does not of itself require the court to invoke protective procedures *sua sponte*. Harried v. United States, 128 U.S.App.D.C. 330, 389 F.2d 281 (1967). But here, unlike *Harried*, the defendant was not staking all on an insanity defense. On the contrary, there was in this case a substantial possibility that on the merits the jury would not find complainant's testimony to have been corroborated[5] and would not find defendant guilty beyond a reasonable doubt. In those circumstances the judge interposing an insanity defense did have the obligation to establish bifurcated trial or other protective procedure to avoid prejudice to the defendant from the court's insistence on airing a defense interposed contrary to the defendant's will. That a defendant may be entitled to

greater protection in procedures when the insanity defense is raised by the court and not himself, *see* Lynch v. Overholser, 369 U.S. 705, 82 S.Ct. 1063, 8 L. Ed.2d 211 (1962).

In summary this appeal presents this combination: (1) the case is close on the merits, taking into account the weakness in the prosecution's corroboration evidence, and what is at best a borderline competency of the witness called by the prosecution to give corroborative testimony; and (2) the *strong* corroborative evidence was given by the witness called in regard to a defense of insanity, a defense which was resisted by the defendant who insisted on his innocence, and which the court invoked on its own motion, without either providing a bifurcated trial, or establishing any other procedure to assess and minimize the possibility of prejudice to the defense on the merits. We conclude that the interest of justice requires that the judgment be vacated and the case remanded.[6]

So ordered.

---

4. Higgins v. United States, 130 U.S.App. D.C. 331, 401 F.2d 396 (1968); Holmes v. United States, 124 U.S.App.D.C. 152, 363 F.2d 281 (1966).

5. Ewing v. United States, *supra* note 2.

6. Our order neither requires or prohibits a new trial.