**UNITED STATES of America**

v.

**Paul BRADLEY, Appellant.**

**No. 24432.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 27, 1971.

Decided April 20, 1972.

Rehearing Denied June 2, 1972.

14. Montana-Dakota Utilities Co. v. Northwestern Public Serv. Co., 341 U.S. 246, 71 S.Ct. 692, 95 L.Ed. 912 (1951).

Mr. Richard H. Speidel, Washington, D. C. (appointed by this court), for appellant.

Mr. Jerome Wiener, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty. at the time the brief was filed, and John A. Terry and James E. Sharp, Asst. U. S. Attys., were on the brief, for appellee.

Before FAHY, Senior Circuit Judge, and McGOWAN and MacKINNON, Circuit Judges.

PER CURIAM:

Appellant stands convicted of five counts of assault with a dangerous weapon. 22 D.C.Code § 502.[1] On appeal, he claims error in the trial judge's finding that he was competent to stand trial, and in the failure of the judge to order *sua sponte* further inquiry into the question of whether the offense was the product of a mental disease or defect. The issues involved here are not new to this court, Green v. United States, 128 U.S.App.D.C. 408, 389 F.2d 949 (1967); Whalem v. United States, 120 U.S.App.D.C. 331, 346 F.2d 812, cert. denied, 382 U.S. 862, 86 S.Ct. 124, 15 L.Ed.2d 100 (1965); United States v. Ashe, 138 U.S.App.D.C. 356, 427 F.2d 626 (1970). After careful consideration of the record before us, we find no error necessitating reversal.

Immediately before the beginning of the trial, the prosecutor informed the trial judge that the appellant had had an epileptic seizure the day before, and that

1. The charges grew out of two incidents in which, in the early morning of September 9, 1969, appellant presented himself at the apartments of friends. In the one instance, he fired a shot through the door when admission was denied to him, and in the other he threatened the occupants of the room with a shotgun. When the police arrived at appellant's home shortly thereafter to arrest him, he pointed a revolver at them and had to be disarmed. Two of the victims of the assaults testified that, although appellant might have been drinking at the time, he was not drunk; and appellant, testifying in his own defense, said that he had been drinking, but was not drunk.

he, the prosecutor, had recently learned that the appellant had had four prior mental examinations. When queried by the court on the matter, each of the two counsel representing appellant disclaimed any purpose to seek appellant's commitment for observation on the issue of competency to stand trial, and expressed to the court their view, based on considerable contact with appellant, that he was competent to stand trial.[2] They further represented that appellant himself asked that no reference be made to the prior commitment,[3] from which it may be inferred that he did not wish to raise any insanity defense.

On the basis of these representations, the court suggested that the United States Attorney

> "make some inquiry at St. Elizabeths as to (appellant's) prior commitments. But should it become appropriate to get into that, we can handle that on some kind of bifurcated basis, and we can go ahead and try the case on the merits now."

To this suggestion no objection was made. After the verdict, the court ordered appellant committed to St. Elizabeths for thirty days observation in order, in the court's words, to

> "determine in connection with the St. Elizabeths information as to whether this court should, at (counsel's) urging, or *sua sponte*, interpose an insanity defense in this case."

The court also felt that a current report on appellant's "difficulties" [4] would "aid the sentencing process."

The order committing appellant asked St. Elizabeths to report as to (1) whether appellant was suffering from mental disease or defect at the time of the offense, (2) if so, whether the offense was the product of the disease or defect, and (3) whether appellant was currently suffering from any mental disease or defect which would be likely to make him dangerous to himself or others. After examining appellant, the staff at St. Elizabeths reported to the court that (a) appellant was competent to stand trial, (b) at the time of the offense he was suffering from mental illness (Nonpsychotic Organic Brain Syndrome With Epilepsy (Alcoholic Factors)), (c) no opinion has been formed as the whether "the alleged offense was the product of an abnormal mental condition," and (d) appellant was presently suffering from mental illness likely to make him dangerous to himself or others.

At a hearing convened by the court subsequent to the receipt of this report, the court asked defense counsel whether there was any objection to it. When counsel replied that there was not, and that, in the view of the defense, "[A]ppellant is [not] the type to be incarcerated in St. Elizabeths," the court said: "I do not think we need to have any order with respect to this St. Elizabeths matter." Appellant was subsequently sentenced to a term of imprisonment.

■ The decision of the trial judge *to proceed with a trial on the merits* without ordering a commitment for competency observation was clearly not error *per se*. Whether to commit a defendant for such observation under 24 D.C.Code § 301(a) before trial is within the court's discretion, even if the defense had moved for commitment.[5] Cer-

---

2. THE COURT: Do you find him competent? Do you find that he understands what this case is about and you can deal with him?
   MR. PERRY: Yes, sir. I have talked to him any number of times. I have known him.
   .    .    .    .    .
   MR. ARTIS: We have known him prior to this probably six months and we are convinced that he is well able to handle himself.

3. MR. ARTIS: . . . The defendant said he didn't want to mention (the prior commitments), didn't want to have anything to do with that, didn't want us to bring that up.

4. THE COURT: . . . He obviously has difficulties with alcohol.

5. 24 D.C.Code § 301(a) (1967) provides: Whenever . . . it *shall appear to* the court from the court's own observations, or from prima facie evidence sub-

tainly in the absence of any objection or motion from defense counsel, as was the case here, we cannot say that the court's failure to commit was an abuse of discretion, particularly in the context of a simultaneous expression of willingness to try, through bifurcation, any insanity defense that might subsequently appeared appropriate.[6]

Appellant now contends, however, that the finding of competency implicit in the judge's decision to try the case on the merits was subsequently rendered erroneous by the discrepancy between the report from St. Elizabeths and the order committing appellant for observation. His theory is that, even though the report certified him competent to stand trial, the fact that it appears mistakenly to have assumed—in volunteering an answer to a question which had not been asked—that he had not yet been tried rendered the report so "substantially suspect" as to require a judicial competency hearing under our decisions in *Green* and *Whalem, supra.*

■■ The first fallacy in this argument is that, even assuming—which we do not—that the making of the report two months after the trial would render its finding of competency "substantially suspect," in this case appellant was not committed for the purpose of determining his competence to stand trial, but to determine his mental state at the time of the offense, and currently. Defense counsel had explicitly represented to the trial judge that their client was competent, and had asked that the trial go forward without commitment for a mental examination. The finding of competence by the experts in the subsequent report was, thus, interesting but superfluous. Secondly, *Green* and *Whalem,*

*supra,* contemplate only that, in respect of reports certifying competence which are "substantially suspect," the judge shall convene a hearing at which objections to the report can be explored. Here, a hearing was convened with respect to the report, but appellant took no exception to it and was wholly uninterested in pursuing any issue with respect to it.

■ Appellant additionally claims error in the failure of the trial judge to investigate further, on his own motion, the issue of productivity. Such an investigation, presumably, would be with a view to the court's raising *sua sponte* an insanity defense. Even more than the decision to order commitment for observation under 24 D.C.Code § 301(a) or to hold a judicial competency hearing notwithstanding a psychiatric report of competence, the decision of a trial judge to interpose an insanity defense on his own initiative and responsibility resides in his discretion. *Whalem* and *Ashe, supra.* Such a decision, especially when taken against the wishes of the accused himself, necessitates the utmost care in judgment, and requires consideration of many factors. The fact that appellant on appeal, after a verdict of guilty, now changes his mind and claims to want an insanity defense cannot, at least by reference to the precise circumstances of this record, render erroneous the failure of the trial judge to insist upon it *sua sponte.*

Against the background of appellant's affirmative purpose not to object to the report or to raise an insanity issue, the trial judge was confronted with a report that disclaimed any opinion on productivity, and that diagnosed appellant's illness as "Nonpsychotic Organic Brain

---

mitted to the court, that the accused is of unsound mind or is mentally incompetent so as to be unable to understand the proceedings against him or properly to assist in his own defense, the court *may* order the accused committed to the District of Columbia General Hospital or other mental hospital. . . . (emphasis supplied).

6. *See* United States v. Bennett, decided January 19, 1972, 148 U.S.App.D.C. 364, at 371–374, 460 F.2d 872 at 879–882; United States v. Ashe, 138 U.S.App.D.C. 356, 427 F.2d 626 (1970); Higgins v. United States, 130 U.S.App.D.C. 331, 401 F.2d 396 (1968); Holmes v. United States, 124 U.S.App.D.C. 152, 363 F.2d 281 (1966).

Syndrome With Epilepsy (Alcoholic Factors)"—a diagnosis that does not suggest on its face the likelihood that the offense was the product of the illness. Moreover, the trial judge had a lengthy opportunity to observe appellant throughout the proceedings in court, and was thereby enabled to form some impressions relevant to the question of whether the insanity defense should be injected contrary to appellant's wishes. In light of these considerations, we are not prepared to say that the court below abused its discretion in failing to pursue further the insanity issue. *See* Trest v. United States, 122 U.S.App.D.C. 11, 350 F.2d 794 (1965), cert. denied, 382 U.S. 1018, 86 S.Ct. 634, 15 L.Ed.2d 532 (1966).

The judgment of the District Court is Affirmed.

FAHY, Senior Circuit Judge, concurring in part, dissenting as to affirmance:

I concur in the opinion of the court finding no error insofar as the competency of appellant to stand trial is concerned. But I have a different view of the failure of the trial court to go further sua sponte with respect to the issue of appellant's mental responsibility, following the verdicts of guilt.

At an early stage of the proceedings the court had been alerted to the problem by the Assistant United States Attorney, who had advised that appellant had had an epileptic fit at police headquarters when arrested and had had "four prior mental observations." Counsel for appellant had also informed the court that appellant had been in St. Elizabeths Hospital. Thus informed, the court postponed a decision as to what need be done about the situation, stating:

. . . should it become appropriate to get into that, we can handle that on some kind of bifurcated basis, and we can go ahead and try the case on the merits now.

\* \* \* \* \* \*

. . . if later investigation shows there is a problem there, we can deal with it, assuming there was a conviction in this situation; if not, it becomes academic.

Such later investigation was initiated at the conclusion of the trial. The court asked the Assistant United States Attorney when appellant was last at St. Elizabeths. Without the record before him the Assistant United States Attorney was indefinite. Appellant's attorney remarked that he did not know. The appellant himself, on inquiry by the court, replied, "I don't recall right now, sir. I think it was—" at which point the Assistant United States Attorney stated that he believed the first time was about 1963 and the last time about three years ago. Appellant's wife, who was present, was consulted, after which it was indicated that Mr. Bradley was last at St. Elizabeths "one or two years ago" for sixty or ninety days.

In view of all that was before the court on the subject the judge stated:

Mr. Artis [defense counsel], I feel that he ought to be committed to St. Elizabeths at this time for a thirty-day period, and that we should then be preparing at the same time a pre-sentence report; and determine in connection with the St. Elizabeths' information as to whether the Court should at your urging, or sua sponte, interpose an insanity defense in this case. I don't feel I have enough information to do it, but there certainly is a sufficient history which you have indicated you became just recently aware of.

. . . . . .

My interest is finding out in any way the community can help this man, and I think it is important that we get the benefit of a current study as to his situation out there.

. . . . .

[Defendant Bradley]: Thank you very kindly, sir.

The Order was entered pursuant to 24 D.C.Code § 301(a). It committed appel-

lant to the Hospital up to thirty days for examination and report to the court whether defendant "at the time of the criminal offense, on or about September 9, 1969, was suffering from a mental disease or defect which substantially affected his mental or emotional processes and substantially impaired his behavior controls, and, if so, whether his criminal act was the product of his mental condition." If so, the Order further provided, then the examining psychiatrist was to determine whether the defendant "is presently suffering from a mental disease, defect or illness from which he is likely to be a danger to himself or others if released and allowed to remain at liberty."

In due course the Superintendent of St. Elizabeths responded to the Order as follows:

> Although [Mr. Bradley] is suffering from Nonpsychotic Organic Brain Syndrome with Epilepsy (Alcoholic Factors), he is competent for trial by virtue of having a rational and factual understanding of the charges pending against him and being able to consult with counsel with a reasonable degree of rational understanding. Furthermore, on or about September 9, 1969, the date of the alleged offense, he was suffering from mental illness but we have no opinion as to whether the alleged offense was the product of an abnormal mental condition. However, he is likely to be dangerous to himself or others if allowed to remain at liberty by virtue of mental illness.

The case came again before the court. The court asked Mr. Bradley's counsel whether he had any objection to "this letter from St. Elizabeths" and whether he had any questions about the doctor who had signed the letter.[1] After an expression indicating apparent disdain of doctors, and a brief statement in mitigation of the offenses, counsel for the defense was brought back to the pending subject by the court,

Now, what we are interested in is this letter from St. Elizabeths. What is your application to the Court with regard to that.

Counsel replied that in the final analysis he did not think Mr. Bradley was the type to be incarcerated in St. Elizabeths. The court inquired whether he was objecting to the letter. Counsel responded, "No, Your Honor." Without more the court then arranged with the probation official who was present for a report, and concluded the session by stating only: "I do not think we need to have any Order with respect to this St. Elizabeths matter."

Some days later the sentence of imprisonment was imposed. At that time the court was faced with (1) a crime involving bizarre behavior, (2) the Hospital report of Mr. Bradley's mental illness at the time the offense was committed and when the report was made, and that Mr. Bradley was currently likely to be dangerous to himself and others if at liberty, (3) a prior history of mental observation, (4) another fairly recent commitment to St. Elizabeths, (5) the statement of defense counsel referred to above and (6) the behavior of defendant at the trial.

None of the cases cited by the majority or the Government support the course adopted by the District Court in light of the foregoing situation. Cross v. United States, 128 U.S.App.D.C. 416, 389 F.2d 957 (1968), is readily distinguishable. This court affirmed the refusal of the District Court sua sponte to raise the insanity defense because there was substantial evidence the defendant was sane at the time the offense was committed, a psychiatrist's trial testimony that defendant was fully competent to assert the defense if he wanted to, and upon inquiry by the court the defendant clearly stated that he did not wish to plead insanity. United States v. Ashe, 138 U.S.App.D.C. 356, 427 F.2d 626 (1970), is inapposite. The judge interposed the

---

1. The letter was signed by Dr. Elizabeth Strawinsky for Dr. Luther Robinson, the Superintendent of the Hospital.

insanity defense without taking sufficient precautions against prejudicing Ashe's rather substantial defense on the merits. This court reversed for such failure, and not because the insanity defense was interposed. In Whalem v. United States, 120 U.S.App.D.C. 331, 346 F.2d 812 (1965), the trial judge, as this court pointed out in its opinion, was faced with two professional competency reports, one stating that Whalem was not mentally ill at the time the offense was committed, the other stating that Whalem was mentally ill at that time, but that the offense charged was not the product of the illness. In addition, Whalem expressly declined to plead insanity. This court held that in such circumstances the District Court acted properly in not sua sponte putting Whalem's sanity in issue. The court, however, further stated that the trial judge must refuse

> to allow the conviction of an obviously mentally irresponsible defendant, and when there is sufficient question as to a defendant's mental responsibility at the time of the crime, that issue must become part of the case. Just as the judge must insist that the *corpus delicti* be proved before a defendant who has confessed may be convicted, so too must the judge forestall the conviction of one who in the eyes of the law is not mentally responsible for his otherwise criminal acts. We believe then that, in the pursuit of justice, a trial judge must have the discretion to impose an unwanted defense on a defendant and the consequent additional burden of proof on the Government prosecutor. So, our query is whether in this case there was a combination of factors which required the trial judge to inject the insanity issue for, if such factors existed, his failure to do so is an abuse of discretion and constitutes error.[10]

10. No rigid standard exists to control the District Court in deciding whether it should require the insanity issue to be submitted. As a matter within the sound discretion of the District Court, this question must be resolved on a case by case basis.

120 U.S.App.D.C. at 337–338, 346 F.2d at 818–819.

Finally, there is Trest v. United States, 122 U.S.App.D.C. 11, 350 F.2d 794 (1965), cited by the majority. Not only did appellant there refuse to allow an insanity defense to be raised, but this court in its opinion pointed out that "introduction of the insanity issue might well have prejudiced" the "closely contested issue" whether Trest did in fact commit the criminal act. In our case such prejudice could not have occurred, because the court had deferred consideration of the insanity defense until after the trial of the factual issues had been completed.

The view expressed by defense counsel was I think altogether unequal to the task of supplanting the relevant data before the court, and while the judge's own observation of Mr. Bradley during the trial was relevant to Mr. Bradley's competency to understand the proceedings and to assist counsel, it was of less utility on the issue of his mental responsibility at the time the charged conduct occurred. Moreover, it could not in any event solve the problem created by the report of the Hospital and the other data before the court. The "substantial doubt" test of competency to be tried set out in Hansford v. United States, 124 U.S.App.D.C. 387, 365 F.2d 920 (1966), stemming from Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed. 815 (1966), was easily satisfied here if the test is transferred to the issue of responsibility.

When the trial of the factual issues as to what occurred was concluded, the judge quite properly, as he had forecast he would do, turned to the matter of an insanity defense. Concerned about Mr. Bradley's mental condition as it affected his responsibility the judge ordered him committed under 24 D.C.Code § 301(a) to St. Elizabeths. Mr. Bradley raised no objection. He thanked the judge, ob-

viously concurring in this procedure. The consequence, represented by the Hospital report, was to leave no reasonable doubt that Mr. Bradley had a very substantial insanity defense. The court, then, should have required the issue to be tried, unless the defense was intelligently and persuasively waived by Mr. Bradley. Nothing of that sort occurred. Were there any doubt about waiver—I have none—at least a remand for the trial court's finding with respect to it would be the course to adopt.

Moreover, it is not clear to me that the choice available to the trial court was limited to either sentencing Mr. Bradley or sua sponte ordering a trial of the issue of responsibility, by the court if jury were waived.[2] It would seem in any event that in view of the "no opinion" report of St. Elizabeths on productivity the situation called for further investigation of that issue, better to inform the court as to the possible need for a trial of the issue of responsibility. *See, for example,* Bradley v. Preston, D. C., 263 F.Supp. 283, 284 (1967). If further light on the issue of productivity turned out not to be helpful to Mr. Bradley, the District Court I think would have had a sounder basis for the exercise of its discretion not to have a full trial of the insanity defense. I do not exclude other possible alternatives. I would be willing to consider also the availability to the District Court of further inquiry, short of a trial of the insanity defense, as to the character and degree of the mental disease, this being also in aid of the exercise of the court's discretion. It does not appear whether the mental illness from which Mr. Bradley suffered when the Hospital reported is the same as the mental illness from which he was suffering the date of the offense. We do know, however, that when sentenced he was dangerous to himself and others by reason of his mental illness, and I should suppose that condition might bear upon his earlier condition. If Mr. Bradley's prior mental illness was the same as his mental illness the date of the report he might also have been dangerous, due to his mental illness, the date of the offense.

I do not think imprisonment in the penitentiary was validly imposed. I think the discretion residing in the court was not soundly exercised, and for that reason was "abused," though I see no need for a reviewing court to characterize the action as an "abuse" except as the term is used to describe error deemed to prevent the reviewing court from approving the course followed, with its consequences.

In respectfully dissenting from affirmance I would be ready to seek agreement with the majority on a choice of alternatives which might be considered available to the trial court in the situation presented. Our consideration of alternatives is especially desirable in the absence of any explanation by the District Court of its paradoxical decision to sentence appellant notwithstanding the accumulating evidence of his mental irresponsibility.

---

2. If found not guilty by reason of insanity appellant would not be automatically committed. He would have an opportunity to

demonstrate his present sanity. Lynch v. Overholser, 369 U.S. 705, 82 S.Ct. 1063, 8 L.Ed.2d 211 (1962).