**Milton KINSMAN, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 1508.**

Supreme Court of Alaska.

July 27, 1973.

Herbert D. Soll, Public Defender, R. Collin Middleton, Deputy Public Defender, Anchorage, for appellant.

John E. Havelock, Atty. Gen., Juneau, Seaborn J. Buckalew, Jr., Dist. Atty., Charles M. Merriner, Robert L. Eastaugh, Stephen G. Dunning, Asst. Dist. Attys., Anchorage, for appellee.

Before RABINOWITZ, C. J., and CONNOR, ERWIN and BOOCHEVER, JJ.

## OPINION

ERWIN, Justice.

This is an appeal from the jury conviction of Milton Alfred Kinsman for first degree murder. The victim, Harriet Keizer, was stabbed fifteen times with a sharp instrument shortly after 1:30 in the morn-

ing on September 23, 1970 in the Ketchikan apartment she had been sharing with Kinsman. At about 1:30 a. m., Keizer, who had been seen drinking with Kinsman earlier that evening at various bars, asked the apartment manager to get her clothes. The manager dressed and accompanied Keizer and Kinsman to the apartment. There she observed Kinsman strike Keizer several times. The manager told Kinsman to stop and ran back to the office to phone the police. While inside the office she observed Kinsman come down the stairs from the upper floor, apparently enter the apartment again and then go down the steps to the outside. The police officer summoned by the manager saw Kinsman leaving the apartment and detained him while another officer went upstairs and found Keizer lying on the apartment floor in a pool of blood.

Kinsman had a number of spots of blood on himself which were found to be human blood of Type A, the same type Keizer had. A witness testified that Kinsman had earlier placed a knife in his boot. This knife was found in a refrigerator at the head of the stairs the manager had seen Kinsman descending.

At trial, although defense counsel did attempt to introduce evidence that Kinsman had not committed the criminal act, primary emphasis was placed on the defense of insanity. One psychiatrist testified that Kinsman had an antisocial personality, but was not psychotic; another testified that he was schizophrenic.

The jury was given a traditional *M'Naghten* insanity instruction which focused exclusively on the cognitive capacities of the brain.[1] The expert testimony regarding the impairment of Kinsman's volitional capacities, therefore, became legally irrelevant and the jury convicted Kinsman of first degree murder.

## I

■ The controlling issue in this case —whether the statutory test (American Law Institute) or the *M'Naghten* test for insanity should have been used—has been thoroughly discussed by this court in Schade v. State, 512 P.2d 907 (Alaska, 1973), and that case is controlling here.[2] Thus this case must be reversed and remanded for a new trial using the test set forth in AS 12.45.083(a).

## II

Although the issue of the insanity test is dispositive, this court would be remiss in its duty if it did not consider some subsidiary issues that have been raised and which must be considered for retrial.

---

1. The insanity instruction sent to the jury did not contain the conjunctive aberration in the M'Naghten test approved by this court in Chase v. State, 369 P.2d 997 (Alaska 1962). The court's Instruction 32 states in part:

   Legal insanity, as the words are used in these instructions, means a diseased or deranged condition of the mind which makes a person incapable of knowing or understanding the nature and quality of his act, or makes a person incapable of knowing or understanding that his act was wrong.

   If you find that the defendant was capable of knowing and understanding the nature and quality of his act and, in addition, was capable of knowing and understanding that his act was wrong, you will find that he was legally sane.

   However, if you find that the defendant was not capable of knowing or understanding the nature and quality of his act, you will find that he was legally insane; or, if you find that he was incapable of knowing or understanding that his act was wrong, you will find that he was legally insane.

   Mental illness and mental abnormality, in whatever form either may appear, are not necessarily the same as legal insanity. A person may be mentally ill or mentally abnormal and yet not be legally insane. For mental illness or mental abnormality to be a defense to crime, such condition must make the person incapable of knowing or understanding the nature and quality of his act, or make him incapable of knowing or understanding that his act was wrong.

2. I adhere to my dissent in Schade v. State.

### 1. *Burden of Proof*

When this case is retried under AS 12.-45.083(a), the ancillary problem of burden of proof raised by appellant will also be covered by AS 12.45.083:

> (b) Reliance on mental disease or defect as excluding responsibility is an affirmative defense. The burden of proof beyond a reasonable doubt does not require the prosecution to disprove an affirmative defense unless and until there is evidence supporting the defense. The requirement of evidence supporting the affirmative defense is not satisfied solely by evidence of an abnormality which is manifested only by repeated criminal or otherwise antisocial conduct.

This court need not discuss this issue further.

### 2. *Judgment of Acquittal*

■ Appellant advances the argument that this court should direct a judgment of acquittal without retrial, for there was no evidence upon which reasonable minds could differ. In assessing a motion for judgment of acquittal, the appropriate test is the one articulated by this court in Bush v. State, 397 P.2d 616, 618 (Alaska 1964) (Footnotes omitted.):

> ⋅ On a motion for a judgment of acquittal the judge must take the view of the evidence and the inferences therefrom most favorable to the state. If he determines that fair minded men in the exercise of reasonable judgment could differ on the question of whether guilt has been established beyond a reasonable doubt, then he must submit the case to the jury.[3]

In Bowker v. State, 373 P.2d 500, 501–502 (Alaska 1962), this court affirmed a criminal conviction in spite of uncontradicted expert testimony that defendant was insane:

> We shall not adopt a rule which would treat medical testimony as conclusive merely because it is not disputed by other medical testimony. The jury should be free to make an independent analysis of the facts on which the expert's opinion rests, and thus exercise their historic function of passing on the credibility of the witness. . . . [To do otherwise] would be transferring the jury's function to the psychiatrist and substituting a trial by experts for a trial by jury.

■ In the case at bar, one psychiatrist testified that Kinsman had an antisocial personality but was not psychotic. But even Doctor Wolf, who testified that Kinsman was schizophrenic, was equivocal as to whether his illness would have caused him to lose volitional control in the specific circumstances at issue. He did not state that the victim's apparent decision to leave Kinsman would cause him to cross the threshold of control. In addition there was non-expert testimony that arguably indicates that Kinsman was sane. Evidence was presented that Kinsman hid the knife in the refrigerator immediately after the stabbing. One witness described Kinsman as "calm and collected" when stopped by the police shortly after the killing. Under these circumstances we find a jury issue could be presented under this state of the record and a directed verdict is not appropriate.

### 3. *Bifurcated Trial*

■ Appellant asserts that he has a right to a bifurcated trial.[4]

In Holmes v. United States, 124 U.S. App.D.C. 152, 363 F.2d 281 (1966), the

3. *See also* Trounce v. State, 498 P.2d 106, 110 (Alaska 1972) ; Tarnef v. State, 492 P.2d 109, 117 (Alaska 1971) ; Jordan v. State, 481 P.2d 383, 387 (Alaska 1971).

4. The argument for bifurcated trial is set out fully in appellant's reply brief. A good comparison of the arguments for and against bifurcated trials can be had by contrasting Comment, Due Process and Bifurcated Trials: A Double-Edged Sword, 66 Nw.U.L.Rev. 327 (1971) with Louisell & Hazard, Insanity as a Defense: The Bifurcated Trial, 49 Cal.L. Rev. 805 (1961). California's system will serve to illustrate how a bifurcated trial works:

> When a defendant pleads not guilty by reason of insanity, and also joins with it another plea or pleas, he shall

District of Columbia Circuit Court of Appeals held that trial courts have discretion to order bifurcation as part of the court's common law power to control the submission of issues to the jury.[5]

It should be noted here that Alaska Rules of Criminal Procedure 51 provides:

> These rules are designated to provide for the efficient operation of the courts of the State of Alaska. *If no specific procedure is prescribed by rule or statute, the court may proceed in any lawful manner not inconsistent with these rules, the constitution, and the common law.* (Emphasis added.)

The *Holmes* court relied in part on the similarly worded Federal Rules of Criminal Procedure 57(b), and thus it would appear that this matter is within the trial court's discretion (reviewable on appeal for abuses thereof).[6]

### 4. Instruction

 Finally, appellant argues that it was error not to instruct the jury that if Kinsman were found not guilty by reason of insanity he would be institutionalized under AS 12.45.090:

> Commitment of Defendant on Ground of Insanity. If the jury finds the defendant not guilty on the ground of insanity and the court considers his being at large dangerous to the public peace or safety, the court shall order him to be committed to an institution authorized by the commissioner of health and welfare to receive that person, and held in custody until he becomes sane or is otherwise discharged therefrom by authority of law.

While appellant did not request such an instruction below and is now precluded from assigning as error on appeal,[7] we are of the opinion that an instruction of this type should be given whenever it is requested by the defendant.[8]

This case is reversed and remanded for further proceedings.

FITZGERALD, J., not participating.

---

first be tried as if he had entered such other plea or pleas only, and in such trial he shall be conclusively presumed to have been sane at the time the offense is alleged to have been committed. If the jury shall find the defendant guilty, or if the defendant pleads only not guilty by reason of insanity, then the question whether the defendant was sane or insane at the time the offense was committed shall be promptly tried, either before the same jury or before a new jury in the discretion of the court. In such trial the jury shall return a verdict either that the defendant was sane at the time the offense was committed or that he was insane at the time the offense was committed.

. . .

Cal. Penal Code § 1026 (West 1970).

5. *See also* United States v. Ashe, 138 U.S.App.D.C. 356, 427 F.2d 626 (1970) ; Contee v. United States, 133 U.S.App. D.C. 261, 410 F.2d 249 (1969).

6. *See* United States v. Ashe, 138 U.S.App. D.C. 356, 427 F.2d 626 (1970).

7. *See* Crim.R. 30(a) ; Spight v. State, 450 P.2d 157, 160 (Alaska 1969) ; Dimmick v. State, 449 P.2d 774, 776 (Alaska 1969) ; Daniels v. State, 388 P.2d 813, 816 (Alaska 1964).

8. *See* Schade v. State, 512 P.2d 907 (Alaska 1973).