OPINION
 

 COATS, Chief Judge.
 

 Eric Morrow appeals his conviction for failing to appear at his felony sentencing.
 
 [1]
 
 Morrow contends on appeal that Superior Court Judge Larry C. Zervos abused his discretion in (1) denying his motion to dismiss the indictment, (2) denying his motion to bifurcate his trial, and (3) admitting evidence of two prior incidents where Morrow had failed to appear. We conclude that Judge Zervos did not abuse his discretion.
 

 The State cross-appeals, arguing that Judge Zervos erred in instructing the jury on the culpable mental state for failure to appear. We conclude that this issue is moot in light of Morrow’s conviction.
 

 Factual background
 

 On May 2, 2001, Morrow pleaded guilty to felony assault in Sitka Superior Court. Both Morrow and his attorney were present at this change of plea hearing. The court set July 12, 2001, as the sentencing date. Morrow failed to appear at the July 12th hearing. The court issued a warrant for Morrow’s arrest for failure to appear. Morrow was arrested on July 24, 2001, in Sitka.
 

 A grand jury indicted Morrow on one count of failure to appear. At trial, Morrow testified that he had mistakenly written down the sentencing date as August 12, 2001, rath
 
 *264
 
 er than July 12, 2001. A jury convicted Morrow of failure to appear. Morrow appeals.
 

 Morrow’s motion to dismiss the indictment
 

 Susan Roberson, the in-court clerk for the Sitka superior court, was the only witness called to testify before the grand jury. She testified that she was acting as the in-court clerk on the day that Morrow pleaded guilty to the assault charge. She also testified that, at this hearing, the court informed Morrow of the time and date of his sentencing.
 

 Roberson further testified that she was the in-court clerk at the scheduled July 12th sentencing hearing. She testified that although the hearing started on time, Morrow was not present; however, his defense attorney was. The defense attorney offered no explanation for Morrow’s absence, and the court issued a warrant for Morrow’s arrest.
 

 At one point during the grand jury hearing, the prosecutor offered the grand jury a certified copy of the conditions of release form which the court gave to Morrow prior to the change of plea hearing. This document did not say anything about the sentencing hearing date which the court later set after Morrow had changed his plea. The prosecutor apparently introduced the form to show the grand jury that the court had informed Morrow of his duty to appear at all scheduled court proceedings. A grand juror then asked how they could know that Morrow understood when his next court date was. The prosecutor responded as follows:
 

 Prosecutor: I think you’re getting into deliberations. The state has presented the evidence that I’m going to rely on in this case. And again, it’s your decision whether all of that evidence taken together, unexplained or uncontradicted, would warrant a trial jury to return a verdict of guilty.
 

 The following exchange then ensued regarding the conditions of release form:
 

 Grand Juror: I have one more question on this. The exhibit that you gave me, there’s a section down here called agreement by defendant. I have reviewed the above order. I promise to appear at all court hearings and comply with all other conditions set. And it’s not signed. Prosecutor: I can tell you that it’s not the practice of this jurisdiction that those be signed, the copies of those. I think it indicates on the bottom the copies are distributed. Basically as copies are distributed. That is true. That it’s not signed. If you want further testimony on that I can recall Ms. Roberson. It is not the practice to have those signed in this jurisdiction.
 

 The prosecutor later reviewed all of the elements of failure to appear under AS 12.30.060. The prosecutor told the grand jury that it needed to decide if Morrow acted knowingly when he failed to appear for his sentencing. The grand jury returned a true bill indicting Morrow for failure to appear.
 

 Morrow moved to dismiss the indictment, arguing that the prosecutor’s statement that the practice in the jurisdiction was not to have defendants sign the form amounted to improper testimony. Although witnesses testified that the court often did not require defendants to sign the form, the State conceded that the prosecutor’s statement about local practice was improper because it amounted to testimony by the prosecutor. But the State argued that Morrow had not been prejudiced by this error.
 

 Under
 
 Stem v. State,
 
 “when a defendant proves that the grand jury heard improper evidence, the superior court must engage in a two-part analysis.”
 
 [2]
 
 First, the court must remove the improper evidence from the case heard by the grand jury and decide whether the evidence that remains is legally sufficient to support the indictment.
 
 [3]
 
 If the indictment survives the first step of the analysis, the court must then examine the degree to which the improper evidence might have unfairly influenced the grand jury’s decision.
 
 [4]
 
 The question becomes whether “the
 
 *265
 
 probative force of [the] admissible evidence was so weak and the unfair prejudice engendered by the improper evidence was so strong that it appears likely that the improper evidence was the decisive factor in the grand jury’s decision to indict.”
 
 [5]
 

 Judge Zervos applied the
 
 Stem
 
 standard. He concluded that, after striking the prosecutor’s improper comment, there was sufficient evidence to support the grand jury’s decision to indict. He then weighed whether the prosecutor’s comment could have prejudiced Morrow. He concluded that the prosecutor had responded “inappropriately and probably incorrectly ... about local practices.” But he concluded that the evidence which the State presented about Morrow’s knowledge of the date of his sentencing hearing was strong because Morrow was “present when the date was set.” Judge Zervos concluded that “[t]he prosecutor’s statement was such a small part of the [g]rand [j]ury presentation and on such a side issue that it could not have been ‘a decisive factor in the [g]rand [jjury’s decision to indict.’ ”
 
 [6]
 

 Our review of the record convinces us that Judge Zervos correctly applied the
 
 Stem
 
 analysis and did not err in refusing to dismiss the indictment. Morrow argues that the prosecutor’s comments constituted prose-cutorial misconduct and therefore required dismissal of the indictment. But, as Judge Zervos pointed out, although the supreme court has previously admonished prosecutors for making improper statements to the grand jury, it has not ordered indictments dismissed on this basis if the impropriety did not affect the grand jury’s decision.
 
 [7]
 
 Judge Zervos pointed out that the prosecutorial misconduct which Morrow alleged in this ease had only a minor effect on the grand jury proceeding. He accordingly refused to dismiss the indictment based on prosecutorial misconduct and applied the
 
 Stem
 
 standard. We agree with Judge Zervos’s analysis.
 

 Morrow’s motion to bifurcate his trial
 

 When a court releases a defendant following a criminal charge or conviction, a defendant who knowingly fails to appear in court as required in that ease is guilty of the offense of failure to appear.
 
 [8]
 
 If the person is released in connection with a misdemeanor charge, the failure to appear is a misdemean- or offense.
 
 [9]
 
 But if the failure to appear is in connection with a felony charge, the failure to appear is a felony.
 
 [10]
 
 Morrow argued that the jury would be prejudiced against him if the State introduced evidence that the court proceeding at which he failed to appear was a felony sentencing. He therefore proposed a bifurcated trial. In the first part of the trial, the jury would determine whether Morrow had knowingly failed to appear at a scheduled court proceeding. Only if the jury found Morrow guilty in the first part of the trial would the jury decide whether Morrow’s release was in connection with a felony offense. Judge Zervos denied the motion to bifurcate the trial but cautioned the jury not to be prejudiced by the fact that Morrow had been released on a felony. Morrow argues that Judge Zervos abused his discretion in refusing to bifurcate his trial.
 

 Thirty years ago the Alaska Supreme Court first noted that it was within the discretion of trial courts to order bifurcation.
 
 [11]
 
 We have considered the issue of whether to bifurcate trials in several more recent cases.
 
 [12]
 
 The most recent case in which we discussed bifurcation is
 
 Ostlund v. State.
 

 [13]
 

 The State charged Ostlund with felony driv
 
 *266
 
 ing while intoxicated (DWI).
 
 [14]
 
 In order to convict Ostlund of felony DWI, the State needed to establish that Ostlund drove while intoxicated and that he had two or more prior convictions for driving while intoxicated within the previous five years.
 
 [15]
 
 Ostlund moved for a bifurcated trial.
 
 [16]
 
 In the first part of the trial the jury would determine whether Ostlund had committed his current driving while intoxicated offense.
 
 [17]
 
 If the jury found him guilty of this offense, Ostlund agreed to stipulate to his two prior driving while intoxicated convictions.
 
 [18]
 
 The trial judge denied Ostlund’s motion for a bifurcated trial; he was convicted and appealed.
 
 [19]
 

 We reversed Ostlund’s conviction.
 
 [20]
 
 We pointed out that under the facts of that case, Ostlund’s prior offenses were only relevant to establish that his driving while intoxicated offense was a felony.
 
 [21]
 
 Presenting the jury with evidence of Ostlund’s prior convictions unnecessarily risked prejudicing the jury:
 

 The state never argued that Ostlund’s pri- or offenses were relevant for any purpose other than to establish that his driving while intoxicated offense was a felony. By holding a unitary trial in which the state was allowed to present evidence that Ost-lund had two prior convictions for DWI, the judge unnecessarily presented the jurors with information that could have unfairly prejudiced their deliberations. Having heard that Ostlund had committed DWI on two prior occasions, the jury might have used this information for the purpose prohibited by Evidence Rule 404(b)(1): to infer that Ostlund was a person who characteristically drove while intoxicated, thus making it more likely that he was guilty of the current DWI charge.[
 
 22
 
 ]
 

 But Morrow’s case is different. The fact that Morrow failed to appear for a felony sentencing was relevant for a purpose other than to establish that he had committed a felony. Morrow contended that he made a mistake about when his sentencing was scheduled. Such a mistake is much more plausible if Morrow had failed to appear for a relatively insignificant hearing on a misdemeanor case. The fact that the hearing which Morrow missed was for sentencing on a felony ease tends to make his claim of mistake less believable. Therefore, Judge Zervos could determine that the fact that the hearing that Morrow missed was a felony sentencing had probative value.
 

 Another factor in favor of Judge Zervos’s ruling is the policy argument which we discussed in
 
 State v.
 
 McLaughlin.
 
 [23]
 
 The State charged McLaughlin with felon in possession (possession of a coneealable firearm by a previously convicted felon).
 
 [24]
 
 McLaughlin offered to stipulate to his prior conviction and have the jury decide only the issue of whether McLaughlin knowingly possessed a coneealable firearm.
 
 [25]
 
 The trial judge agreed to this procedure, and the State filed a petition for review.
 
 [26]
 
 We granted the petition and reversed the trial court’s decision.
 
 [27]
 
 We held that the government was entitled to show that the reason McLaughlin could not legally possess a firearm was that he had a prior felony conviction.
 
 [28]
 
 We reasoned that because possession of a coneealable firearm was generally legal, the government’s prosecution would not make sense to the jury unless it could show that McLaughlin was a
 
 *267
 
 convicted felon.
 
 [29]
 
 We concluded that it was important for the jury to understand the nature of McLaughlin’s offense in order to properly fulfill its role in the criminal justice system.
 
 [30]
 

 Judge Zervos could properly have similar concerns in Morrow’s case. In arguing that any juror would know that failure to appear for a court appearance is unlawful, Morrow points out that a prospective juror is informed that if the juror fails to appear for jury duty after receiving a summons, the juror may be found in contempt and punished. He concludes that the jury might not sympathize with someone who failed to appear. He also argues that the jury might assume that Morrow was being prosecuted for a $25 traffic ticket and not take the matter seriously and convict him. But Morrow’s argument illustrates a concern that Judge Zervos could have legitimately had: the jury might be prejudiced by the lack of information about the nature of the charge Morrow faced. The jury might erroneously suspect that the State was prosecuting Morrow for missing a much less significant proceeding. Judge Zervos could have concluded that it would be better to accurately inform the jury about the nature of the State’s case against Morrow.
 

 We emphasize that trial judges have discretion to determine when prior bad act evidence, including evidence of prior convictions, is admissible at trial. This is a balancing which trial judges perform under Evidence Rule 404(b)(1) and Evidence Rule 403.
 
 [31]
 
 If the trial judge determines that the prior crimes evidence is relevant, the trial judge is to consider the danger that jurors will view a previously convicted defendant as a person who commits criminal acts and will presume his guilt from his prior criminal acts. The judge must weigh this possible prejudice against the probative value of the evidence.
 

 In the circumstances of this case, we conclude that Judge Zervos did not abuse his discretion in deciding that evidence of Morrow’s felony charge was relevant, and that Morrow’s motion for a bifurcated trial should be denied. We note that Judge Zervos gave the jury a cautionary instruction and the jury was not informed of the nature of the felony charge for which Morrow did not appear.
 

 Admission of Morrow’s prior incidents when he failed to appear
 

 The present case was not Morrow’s first failure to appear. In 1988, Morrow failed to report to his probation officer for three months. The probation officer then filed a petition to revoke Morrow’s probation. A court hearing was set, and Morrow did not appear at the hearing. In 1989, Morrow was arrested on a bench warrant for this failure to appear. An adjudication date was set on a petition to revoke Morrow’s probation. Morrow did not appear at this hearing. Morrow absconded to Washington where he lived for several years. In 1992, while back in Alaska, he was arrested on the outstanding warrant issued due to his failure to appear at the 1989 hearing.
 

 Prior to trial, the prosecutor asked Judge Zervos to rule that she could introduce evidence of these incidents in order to prove Morrow’s knowledge of his obligation to make court appearances and to show that Morrow’s current failure to appear was not a mistake. Judge Zervos ruled that these incidents would be admissible if Morrow claimed that he did not appear because he made a mistake about the date of the sentencing hearing. He ruled that only the fact that Morrow had previously failed to appear would come before the jury, not the nature of Morrow’s underlying offenses, in order to lessen the danger of unfair prejudice. Morrow testified at trial that he failed to appear because he made a mistake about the date when he was supposed to appear. Judge Zervos then allowed the disputed evidence to come before the jury. Morrow argues that this was error.
 

 
 *268
 
 Admission of evidence of prior bad acts is governed by Evidence Rule 404(b). Evidence Rule 404(b)(1) forbids admitting prior bad acts for the sole purpose of showing a person’s propensity to commit criminal acts.
 
 [32]
 
 But the rule does allow admission of prior bad acts for other purposes such as the absence of mistake or accident. If such evidence is relevant for a proper purpose, the trial court must still examine the evidence under Evidence Rule 403, which directs courts to exclude such evidence if the danger of unfair prejudice outweighs the probative value of the evidence.
 
 [33]
 
 The State must show that the defendant’s past criminal behavior “bear[s] a relevant factual similarity to the charged offense before these past acts can be admitted....”
 
 [34]
 

 Judge Zervos could properly determine that Morrow’s prior incidents of failure to appear were relevant to rebut Morrow’s claim of mistake. The only issue at trial was whether Morrow had knowingly failed to appear for his sentencing. Morrow defended on the ground that he had made a mistake about the date of the sentencing. The fact that Morrow had, on two previous occasions, failed to appear for a court hearing was relevant to rebut his claim of mistake. Morrow points out that there was a danger of unfair prejudice. He also points out that the prior incidents of failure to appear were for the same type of incident for which he was on trial. He argues that the jury might have misused the incidents for forbidden propensity purposes. He also argues that these incidents were of limited probative value because they occurred over ten years prior to the incident which resulted in the current charge.
 

 But Judge Zervos reached a different conclusion. He concluded that Morrow’s prior incidents of failure to appear were highly relevant to rebut Morrow’s claim of mistake. He also concluded that if the State was limited to showing only that Morrow had failed to appear on these two occasions, without being permitted to show any of the underlying offenses, the danger of unfair prejudice was limited.
 

 We conclude that Judge Zervos did not abuse his discretion in admitting the evidence of Morrow’s prior failures to appear. This evidence was relevant to Morrow’s claim of mistake. Failure to appear in court does not appear to be the kind of prior offense which would unfairly prejudice the jury against a defendant. And Judge Zervos took steps to limit the evidence to the fact that Morrow had failed to appear and prohibited the State from introducing any surrounding circumstances that might unnecessarily inform the jury of Morrow’s prior criminal history. Judge Zervos also gave the jury a cautionary instruction. We find no error.
 

 The State’s cross appeal
 

 The State cross appeals, arguing that Judge Zervos erred in instructing the jury on the culpable mental state for failure to appear. But the State has conceded that, if we affirm Morrow’s conviction, it is unnecessary for us to resolve this claim. We accordingly decline to address it.
 

 Conclusion
 

 We have addressed Morrow’s claims of error and found that those claims have no merit. We accordingly affirm Morrow’s conviction.
 

 The conviction is AFFIRMED.
 

 [1]
 

 . AS 12.30.060.
 

 [2]
 

 . 827 P.2d 442, 445 (Alaska App.1992).
 

 [3]
 

 .
 
 Id.
 
 at 445-46.
 

 [4]
 

 .Id.
 

 [5]
 

 .
 
 Id.
 
 at 446 (citing
 
 Oxereok v. State,
 
 611 P.2d 913, 916 (Alaska 1980);
 
 Panther v. State,
 
 780 P.2d 386, 393-94 (Alaska App.1989);
 
 Newman v. State,
 
 655 P.2d 1302, 1306 (Alaska App.1982)).
 

 [6]
 

 . Quoting
 
 Stern,
 
 827 P.2d at 446.
 

 [7]
 

 .
 
 Coleman v. State,
 
 553 P.2d 40, 50 (Alaska 1976).
 

 [8]
 

 . AS 12.30.060.
 

 [9]
 

 . AS 12.30.060(2).
 

 [10]
 

 . AS 12.30.060(1).
 

 [11]
 

 .
 
 Kinsman v. State,
 
 512 P.2d 901, 903-04 (Alaska 1973) (citing
 
 Holmes v. United States,
 
 363 F.2d 281 (D.C.Cir.1966)).
 

 [12]
 

 .
 
 See, e.g., Ross v. State,
 
 950 P.2d 587, 592 (Alaska App.1997);
 
 Tallent v. State,
 
 951 P.2d 857, 865 (Alaska App.1997).
 

 [13]
 

 . 51 P.3d 938 (Alaska App.2002).
 

 [14]
 

 .
 
 Id.
 
 at 939.
 

 [15]
 

 .
 
 Id.
 

 [16]
 

 .
 
 Id.
 

 [17]
 

 .
 
 Id.
 

 [18]
 

 .
 
 Id.
 

 [19]
 

 .
 
 Id.
 

 [20]
 

 .
 
 Id.
 
 at 942.
 

 [21]
 

 .
 
 Id.
 
 at 941.
 

 [22]
 

 .
 
 Id.
 

 [23]
 

 . 860 P.2d 1270 (Alaska App.1993).
 

 [24]
 

 .
 
 Id.
 
 at 1271.
 

 [25]
 

 .
 
 Id.
 
 at 1272.
 

 [26]
 

 .
 
 Id.
 

 [27]
 

 .
 
 Id.
 
 at 1272, 1278.
 

 [28]
 

 .
 
 Id.
 
 at 1277-78.
 

 [29]
 

 .
 
 Id.
 
 at 1274, 1277-78.
 

 [30]
 

 .
 
 Id.
 
 at 1277-78.
 

 [31]
 

 .A.R.E. 403; A.R.E. 404(b)(1);
 
 Ostlund,
 
 51 P.3d at 943-49 (Alaska App.2002) (Mannheimer, J., concurring).
 

 [32]
 

 . A.R.E. 404(b)(1).
 

 [33]
 

 . A.R.E. 403;
 
 Calapp
 
 v.
 
 State, 959
 
 P.2d 385, 387-88 (Alaska App.1998).
 

 [34]
 

 .
 
 Calapp,
 
 959 P.2d at 388 (citing
 
 Adkinson
 
 v.
 
 State,
 
 611 P.2d 528, 530-32 (Alaska 1980) (affirming admission of evidence that defendant had twice previously pointed a shotgun at trespassers to rebut defendant’s assertion that his shooting of a trespasser was an accident);
 
 Allen v. State,
 
 759 P.2d 541, 546-47 (Alaska App.1988) (affirming the admission of a prior similar incident to rebut a defendant’s "good Samaritan” defense to a terroristic threatening charge);
 
 Sheakley
 
 v.
 
 State,
 
 644 P.2d 864, 873-74 (Alaska App.1982) (affirming admission of two prior incidents where defendant had attempted to gouge out eyes where current charge for mayhem was for intentionally gouging the victim’s eyes));
 
 see also Kelly v. State,
 
 663 P.2d 967, 972 (Alaska App.1983) (affirming admission of evidence of a series of bad checks written by defendant when current charge was for writing a single bad check).