Marshall A. CONTEE, Appellant,

v.

UNITED STATES of America, Appellee.

No. 21693.

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 17, 1968.

Decided Feb. 14, 1969.

Mr. David Cobb, Washington, D. C. (appointed by this court), for appellant.

Mr. Daniel J. Gibelber, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., and Frank Q. Nebeker, Asst. U. S. Atty., were on the brief, for appellee.

Before BAZELON, Chief Judge, PRETTYMAN, Senior Circuit Judge, and TAMM, Circuit Judge.

BAZELON, Chief Judge:

Appellant murdered his wife with an ax in their bedroom during the night and turned himself in to the police. His principal defense at trial was insanity,

(dissenting opinion of Justice Frankfurter).

though he also denied premeditation. On this appeal from his conviction for murder in the first degree, he contends that the trial court erred in benying his request for bifurcation of the trial on the merits from the trial on the issue of criminal responsibility, under Holmes v. United States, 124 U.S.App.D.C. 152, 363 F.2d 281 (1966).

In support of his pre-trial motion for a bifurcated trial, defense counsel told the court he had a case for self-defense and a case against the premeditation charged in the indictment for first degree murder. He was afraid the jury would confuse these defenses and the testimony relevant thereto with his insanity defense, which included some evidence inconsistent with the other defenses. Specifically, he cited appellant's statement— made during a sodium pentothal interview which was to be introduced as the basis for psychiatric diagnoses—that he had planned to kill his wife for several months. However, the court trusted itself to prevent confusion and offered to strike from the sodium pentothal interview the prejudicial admission concerning appellant's premeditation. Defense counsel declined the offer, saying that, if accepted, it would render the psychiatric reports incomplete. He concluded that, in a unitary trial, he would not argue self-defense to the jury for fear of their possible adverse reaction to such a contention when set against the sodium pentothal statement he had declined to have stricken. Appellant now contends that the evidence introduced in connection with his insanity defense included much additional matter, not called to the trial court's attention, which was highly prejudicial to his defenses on the merits.

Bifurcation lies in the first instance within the "sound discretion" of the trial court. Holmes v. United States, *supra* at 154, 363 F.2d at 284. Since the *Holmes* decision, we have refused to reverse denials of bifurcation where the defendant had no substantial defense on the merits besides a bare denial, Harried v. United States, 128 U.S.App.D.C. 330, 389 F.2d 281 (1967); where there was no sub-

stantial insanity defense, Higgins v. United States, 130 U.S.App.D.C. 331, 401 F.2d 396 (decided June 28, 1968); and where the request for bifurcation was unnecessarily conditioned upon impaneling of two separate juries, Parman v. United States, 130 U.S.App.D.C. 188, 399 F.2d 559 (decided May 20, 1968). However, a sound exercise of the trial court's discretion will ordinarily result in bifurcation whenever a defendant shows that he has a substantial insanity defense and a substantial defense on the merits to any element of the charge, either of which would be prejudiced by simultaneous presentation with the other. In cases of doubt, the question should be resolved in favor of bifurcation where the evidence on criminal responsibility does not significantly overlap the evidence on the merits and where the same jury can fairly determine both issues. In such cases, little judicial time will be lost by separating the issues. In addition, in many such cases bifurcation holds promise of a substantial economy in judicial resources, since an acquittal on the merits will eliminate altogether the frequently long and complex testimony on the insanity issue.

As noted in *Holmes, supra,* a unitary trial involving both the merits and the issue of criminal responsibility is replete with potential sources of prejudice. Accordingly, especially since the cost of bifurcation to substantial state interests is often minimal or even negative, the trial court should be alert to the need for separate trials whenever the accused proposes to present an insanity defense, regardless of whether defense counsel makes an initial request or an initially sufficient showing of need. In this area as in others, the realities of the contemporary criminal process, in which commonly indigent defendants are often represented by counsel unfamiliar with the intricacies of criminal law and procedure, require the trial court's active concern to insure the fairness of the trial.

At the same time, however, even when it takes the initiative the court must de-

pend largely on defense counsel for the relevant information. The court may inquire though counsel does not come forward, but only counsel can ordinarily answer its inquiries. On the present record, we cannot conclude that the trial judge neglected or misunderstood his duties. Defense counsel made only a minimal showing of possible prejudice, and the court offered to strike the only identifiable source of that prejudice. Counsel may have had good reason to decline the offer, but his given reason— the resulting incompleteness of the psychiatric record—was hardly so cogent as to compel bifurcation instead. On the basis of what it knew or could reasonably be expected to discover, we do not think the court abused its discretion in denying the motion to bifurcate.

Appellant does not contend that defense counsel's failure to make the more substantial showing of prejudice he allegedly could have made amounted to ineffective assistance of counsel, nor does the record compel such a conclusion. However, especially where the stake is life imprisonment for an indigent defendant, a court cannot acquiesce in manifest injustice merely because of the inexperience or excusable neglect of trial counsel. Thus, though not an abuse of discretion when made, the denial of a motion for bifurcation may nonetheless in some circumstances require reversal for a new trial.

In the instant case, the record shows that in "abandoning" his self-defense defense, appellant was not sacrificing anything of value. The sole evidence from which self-defense might have been inferred was appellant's own testimony that he awoke to find his wife on top of him with blood spurting from cuts on his arms. After pushing his wife off, the next thing he saw was a "devil" standing over his wife, whereupon appellant passed out. He did not see an ax at that time or recall axing his wife. It is doubtful that this evidence would have required an instruction on self-defense had one been requested. In any event, we think it is too insubstantial to warrant reversal for lack of bifurcation in the circumstances of this case.

Appellant did, however, have a substantial defense to the charge of murder *in the first degree*—namely, lack of premeditation. The Government's evidence of premeditation, though sufficient, was relatively weak, and appellant's testimony, if believed, negated any consciously formulated design to kill his wife. This testimony, while not presenting an affirmative defense, does amount to a " 'defense' beyond putting the Government to its proof" within the meaning of Harried v. United States, *supra* at 154, 389 F.2d at 284. In *Harried*, the defendant simply denied the offense; in those circumstances we "fail[ed] to see how there [could] be prejudice to the defense on the merits due to failure to bifurcate." *Id.* In the present case, appellant's testimony presented affirmative evidence from which the absence of premeditation could be inferred; and this defense to the first degree murder charge could plainly be prejudiced by other evidence introduced in support of an insanity defense.

Appellant cites as prejudicial some statements he made in his sodium pentothal interview which might have been taken to imply premeditation. He also complains that the evidence relating to his insanity defense informed the jury that he had been guilty of a carnal assault on his 13-year-old stepdaughter, that he had often severely beaten his children, brutally attacked other women, and broken the household furniture, and that (according to a rebuttal psychiatrist) he might be a malingerer. Appellant says that after all this no jury could be expected to weigh dispassionately the evidence properly to be considered in adjudicating the merits. On the other hand, the Government correctly notes that much of this testimony in fact gave substance and plausibility to appellant's claim that he killed impulsively and without premeditation. And the Government earnestly contends, as it did at trial, that the dominant thrust of the extensive testimony admitted only for its bearing on

252

the insanity defense was to bolster, rather than to undercut, appellant's defense on the merits. After careful examination of this voluminous record, we are unable to determine with any confidence whether appellant was on balance helped or hurt. In these circumstances, we think the trial court's ruling, reasonable when made, must stand.

Affirmed.

TAMM, Circuit Judge (concurring in the result):

I concur in the affirmation of this appellant's conviction, but I do not concur in that portion of Judge BAZELON'S opinion which discusses principles relating to the merits or demerits of the bifurcated trial.

PRETTYMAN, Senior Circuit Judge, concurs in the result.