STATE OF NORTH CAROLINA v. GEORGE THOMAS WARD

No. 22

(Filed 2 December 1980)

**1. Criminal Law § 112.6— insanity — burden of proof — "reasonable satisfaction" — error favorable to defendant**

The trial court's instruction that defendant had the burden of proving his defense of insanity to the "reasonable satisfaction" rather than to the "satisfaction" of the jury was favorable to defendant, since "reasonable satisfaction" imposes a lesser burden than "satisfaction."

**2. Criminal Law § 112.6— instructions — reasonable doubt — insanity defense — reasonable satisfaction**

The jury could not have been confused by the court's instruction on the standard of proof beyond a reasonable doubt, requiring full or entire satisfaction, and defendant's standard on the insanity issue, requiring reasonable satisfaction.

**3. Criminal Law § 5.1— guilt — insanity — denial of bifurcated trial**

The trial court did not abuse its discretion in the denial of defendant's motion for a bifurcated trial on issues of his guilt or innocence and his insanity made on the ground that he intended to raise inconsistent defenses of self-defense and insanity since nothing in the record indicates that defendant made more than a bare assertion of an intention to claim self-defense; there was nothing inherently inconsistent between the two defenses; and evidence of self-defense was meager if it existed at all.

**4. Indictment and Warrant § 8.4— election between offenses — denial of pretrial motion**

The trial court did not err in denying defendant's pretrial motion to require the State to elect between the charges of felonious assault with a deadly weapon upon a law enforcement officer in the performance of his duties and felonious assault with a deadly weapon with intent to kill inflicting serious injury since a defendant may be charged with more than one offense based on a given course of conduct, and even when an election ultimately will be necessary, the State is not required to elect prior to the introduction of evidence.

**5. Criminal Law § 63— exclusion of defendant's statements to psychiatrist — failure to show use in diagnosis — absence of answer of witness in record**

In a prosecution for felonious assaults in which a psychiatrist stated his opinion that defendant was suffering from paranoid schizophrenia on the date of

the crimes, the exclusion of the psychiatrist's answer to a question as to what defendant told him regarding the events in question cannot be held prejudicial error where defendant made no showing that statements made by defendant to the witness did in fact bear upon his ultimate diagnosis of defendant's mental condition, and where defendant failed to request that the record reflect what the answer of the witness would have been.

### 6. Criminal Law § 162.6— general objection — failure to show evidence not admissible for any purpose

The trial court properly overruled defendant's general objection to the district attorney's question to a psychiatrist concerning whether defendant was able, at the time of trial, to "function" in society where defendant failed to demonstrate that such evidence would not be admissible for any purpose.

### 7. Criminal Law § 162.6— objection to form of question — relevance of testimony not presented

Defendant's objection to the form of a question was insufficient to present on appeal an issue as to the relevancy of evidence elicited by the question.

### 8. Criminal Law § 112.6— instructions — not guilty by reason of insanity

The trial court did not err in failing to instruct that the jury could find defendant not guilty by reason of insanity when the court instructed that if the jury had a reasonable doubt as to one of the elements of the offense charged, it should return a "verdict of not guilty," or when the court instructed that "all twelve minds must agree on a verdict of guilty or not guilty" where the court included the possible verdict of not guilty by reason of insanity at the beginning of the instructions, after the instructions on the elements of the offense charged, and in the final mandate.

### 9. Criminal Law § 126— instructions — unanimity of verdict

The trial court's instruction on unanimity of the verdict complied with G.S. 15A-1235, and the court's failure to instruct that the individual jurors were not to surrender their own convictions solely in order to reach a verdict was not error, particularly where defendant made no request for such an instruction.

Justice BROCK did not participate in the consideration or decision of this case.

ON writ of certiorari to the Court of Appeals to review the decision of that court, reported in 44 N.C. App. 513, 261 S.E. 2d 274, reversing judgment of *Friday, J.,* 19 February 1979 Session of MECKLENBURG Superior Court.

Defendant was charged in indictments, proper in form, with felonious assault with a deadly weapon upon a law enforcement officer in the performance of his duties, and felonious assault with a deadly weapon with intent to kill inflicting serious injury. He entered pleas of not guilty to both charges.

Evidence for the State tended to show that on 18 March 1978, defendant was stopped by Highway Patrolman Dale Mills for reckless driving. Trooper Mills asked defendant to get out of the car and

to produce his driver's license. Defendant got out of his car and handed his license toward the officer. Defendant then jerked the license back and started to return to his car. When Trooper Mills asked him to stop, defendant suddenly grabbed the officer and yelled, "I'll kill you. I'll kill you." A struggle ensued. Defendant managed to get Mills' flashlight and began to hit the trooper about the head with it. While defendant continued to hit him, Mills reached for his gun and shot twice. As a result, defendant received a wound in the neck and one in the chest.

Defendant did not take the witness stand but offered evidence tending to show that he had been an outpatient at Cleveland County Mental Health Center from April, 1977, until January, 1978. Dr. William Van Fleet, an expert in the field of psychiatry who treated defendant at the Mental Health Center, testified that he had diagnosed defendant's mental condition as paranoid schizophrenia. Several witnesses testified regarding unusual or bizarre conduct on the part of the defendant. Following the incident giving rise to the charges in this case, defendant was admitted to Dorothea Dix Hospital. Dr. James Groce treated him and diagnosed defendant's condition as chronic undifferentiated schizophrenia. Dr. Groce testified at trial that, in his opinion, defendant "did not have the ability to make the distinction between right and wrong."

The jury returned verdicts of guilty on both charges. Defendant was sentenced to not less than eight nor more than ten years on the charge of assault with a deadly weapon with intent to kill inflicting serious injury. On the charge of assault with a deadly weapon upon a law enforcement officer while in the performance of his duties, prayer for judgment was continued from term to term for five years from 23 February 1979. On appeal, the Court of Appeals in an opinion by Judge Martin (Harry C.), Judges Vaughn and Webb concurring, reversed. After the applicable time period had elapsed for petitioning this Court for review pursuant to G.S. 7A-31(a), the State petitioned for a writ of certiorari. We granted the writ on 6 May 1980.

*Rufus L. Edmisten, Attorney General, by W. A. Raney, Jr., Special Deputy Attorney General, for the State.*

*Marnite Shuford for defendant.*

BRANCH, Chief Justice.

[1] We first consider the Court of Appeals' reversal of defendant's

conviction because of the trial court judge's instruction on defendant's burden of proof on the issue of insanity. On that issue the trial court judge gave the following instruction: "He [defendant] must prove defendant's insanity to you to your *reasonable satisfaction."* [Emphasis added.]

Defendant contends and the Court of Appeals agreed that the standard of "reasonable satisfaction" imposes a heavier burden on defendant than the proper "satisfaction" standard. Defendant argues that to uphold this conviction would require the court to overturn the long line of cases which support the "satisfaction" standard. The State, on the other hand, contends that this Court can uphold the conviction without overturning these precedents. The State argues that the "reasonable satisfaction" standard is less burdensome than the "satisfaction" standard, and, thus, the error in the instruction was favorable to defendant.

This Court has not considered this particular permutation of the proper instruction on defendant's burden of proof on the issue of insanity. We have determined that the proper standard of "proof to the satisfaction of the jury" is less burdensome than the standard of "beyond a reasonable doubt"; yet, it may be heavier than the "preponderance of the evidence" standard. *State v. Harris,* 223 N.C. 697, 28 S.E. 2d 232 (1943). We have also decided that the "satisfaction" standard is less burdensome than the "clearly established" test. *State v. Swink,* 229 N.C. 123, 47 S.E. 2d 852 (1948). We have not, however, ever considered where reasonable satisfaction fits into this graduated scale.

Other jurisdictions have wrestled with problems where the trial court judges have strayed from the proper instructions on the burden of proof of insanity. *Modern Statutes or Rules as to Burden and Sufficiency of Mental Responsibility in a Criminal Case,* 17 A.L.R. 3d 146 (1968). Only the courts in Alabama, however, appear to have dealt with the issue in a context similar to that which we face. *Id.* §11.

An Alabama statute requires that defendant prove insanity to the "reasonable satisfaction" of the jury. The Alabama courts have consistently held that an instruction that the defendant must prove insanity to the "satisfaction" of the jury imposes a heavier burden than the proper "reasonable satisfaction" standard. *James v. State,* 167 Ala. 14, 52 So. 840 (1910); *Dean v. State,* 54 Ala. App. 270, 307 So. 2d 77 (1975). The Alabama court in its criminal cases has never

really explained its holding. In *Torrey v. Braney*, 113 Ala. 496, 21 So. 348 (1897), however, it noted that "satisfaction" implies proof beyond any doubt, while "reasonable satisfaction" permits less certainty while still finding in favor of the person with the burden. *Id.* at 504, 21 So. at 350-51.

While Alabama's interpretation in the "satisfaction" definition seems to impose a heavier burden than this Court's construction of the same term, we find that, nonetheless, the Alabama court properly ranks the terms, finding "reasonable satisfaction" imposes a lesser burden than "satisfaction."

The distinction between the terms, however, is not one which can only be made by legal scholars and not by the average juror. The difference in the terms can be illustrated from common experience. For example, a question to a coach after a game about how his team played could evoke two responses, either, "I was satisfied with the team's play" or "I was reasonably satisfied with the team's play." The first response, unlimited by a modifier, indicates a higher degree of satisfaction than the second.

On the basis of common experience and the persuasive Alabama decisions, we conclude that in this case the trial court judge's erroneous instruction on the burden of proof on the issue of insanity was favorable to defendant, and, thus, unobjectionable. *Hardee v. York*, 262 N.C. 237, 136 S.E. 2d 582 (1964). We wish to make it clear that we do not suggest that hereafter the trial judge should use the term "reasonable satisfaction" in lieu of the long-approved "satisfaction of the jury."

[2] Next, defendant contends and the Court of Appeals agreed that the juxtaposition of the terms "beyond a reasonable doubt" and "reasonable satisfaction" could have been confusing to the jury and could have led them to infer that defendant carried the same heavy burden as the State.

This argument is simply not supported by a fair reading of the record. The trial court judge properly instructed on the standard of "beyond a reasonable doubt." He said, "Proof beyond a reasonable doubt is proof that *fully* satisfied or *entirely* convinces you of the defendant's guilt." [Emphasis added.] Later the trial court judge instructed the jury on defendant's insanity plea: "He needed not prove beyond a reasonable doubt that he was insane, but only to your reasonable satisfaction." The jury had before them the stand-

ard of beyond a reasonable doubt, requiring full or entire satisfaction, and defendant's standard on the insanity issue, requiring reasonable satisfaction. Again, a common understanding of the language compels the conclusion that the jury could tell the difference between being reasonably satisfied and being fully or entirely satisfied. We find that the instruction was not so confusing as to require a new trial.

Since the Court of Appeals reversed the judgment, it did not reach defendant's remaining assignments of error. We turn now to those assignments.

[3] By his first assignment of error, defendant contends that the trial court erred in denying his motion for a bifurcated trial. Defendant moved, prior to trial, that he be tried first on the question of guilt or innocence and then tried on the issue of insanity. He alleged that he intended to raise a defense of self-defense and a defense of insanity, two inconsistent defenses which he contends require a bifurcated trial. Defendant concedes that the granting of a motion to bifurcate rests in the sound discretion of the trial judge and is not reviewable absent abuse. *State v. Helms*, 284 N.C. 508, 201 S.E. 2d 850, *cert. denied*, 419 U.S. 977 (1974); however, he relies on the following language in *Helms, supra*, to support this contention:

> Other jurisdictions hold that the sound exercise of the trial court's discretion should result in a bifurcated trial only when "a defendant shows that he has a substantial insanity defense and a substantial defense on the merits to any element of the charge, either of which would be prejudiced by simultaneous presentation with the other." *Contee v. United States*, 410 F. 2d 249 (D. C. Cir. 1969).

*Id.* at 513, 201 S.E. 2d at 853.

The State contends, and we agree, that defendant's motion for a bifurcated trial was properly denied. Nothing in the record indicates that he made more than a bare assertion of an intention to assert self-defense. He produced no evidence tending to support that defense when he made the motion. Neither has defendant demonstrated the manner in which he alleges the defenses would be inconsistent. In *Contee v. United States, supra*, the sole case cited by this Court in support of the proposition in *Helms, supra*, the court stated:

At the same time, however . . . the court must depend

largely on defense counsel for the relevant information ...
Defense counsel made only a minimal showing of possible
prejudice ... On the basis of what it knew or could rea-
sonably be expected to discover, we do not think the court
abused its discretion in denying the motion to bifurcate.

410 F. 2d at 251.

Moreover, on the facts of this case, we can see nothing inher-
ently inconsistent between the defenses of self-defense and insanity.
Neither defense denies that defendant was at the scene of the crime
or that he committed the act in question. Finally, evidence of self-
defense in the instant case is meager if it exists at all, and we agree
with the following observation by the court in *Contee*:

In the instant case, the record shows that in "abandon-
ing" his self-defense defense, appellant was not sacrific-
ing anything of value ... It is doubtful that [the] evidence
would have required an instruction on self-defense had
one been requested. In any event, we think it is too insub-
stantial to warrant reversal for lack of bifurcation in the
circumstances of this case.

*Id.*

This assignment of error is overruled.

**[4]** Defendant next contends that the trial court erred in denying
his pretrial motion to require the State to elect between the offenses
charged. Defendant argues that the two offenses arise out of the
same transaction, and actually only one assault occurred. In mak-
ing his assertion, defendant relies on *State v. Dilldine*, 22 N.C. App.
229, 206 S.E. 2d 364 (1974). In that case, defendant was charged
with shooting his victim three times in the front and twice in the
back. On the basis of this one occurrence, defendant was charged on
one count of felonious assault with intent to kill for the bullets in the
front and another count of felonious assault with intent to kill for the
bullets in the victim's back. The Court of Appeals held that "[i]t was
improper to have two bills of indictment and two offenses growing
out of this one episode." 22 N.C. App. at 231, 206 S.E. 2d at 366.

Defendant's reliance on *Dilldine* is misplaced. There, the de-
fendant was charged on two counts of the *same* offense, felonious
assault with intent to kill, on the basis of what can only be charac-
terized as one assault, or one continuous transaction. In the case at

bar, defendant has been charged with two separate and distinct offenses which happen to grow out of the particular facts of this case. It is elementary that a defendant may be charged with more than one offense based on a given course of conduct. *See State v. Summrell*, 282 N.C. 157, 192 S.E. 2d 569 (1972). In any event, even when an election ultimately will be necessary, the State is not required to elect prior to the introduction of evidence. *State v. Boyd*, 287 N.C. 131, 214 S.E. 2d 14 (1975); *State v. Summrell, supra*. This assignment of error is overruled.

**[5]** Defendant contends that the trial court erred in not permitting Dr. Van Fleet to testify regarding whether defendant had discussed with him the events which transpired 18 March 1978. Defendant elicited from Dr. Van Fleet an opinion that, on 18 March 1978, defendant was suffering from paranoid schizophrenia. Dr. Van Fleet was then asked what defendant told him regarding the events of 18 March 1978. The trial court sustained the State's objection.

Defendant argues that, under *State v. Wade*, 296 N.C. 454, 251 S.E. 2d 407 (1979), a psychiatrist may relate statements made by a defendant which are reliable and which form the basis for diagnosis. In *Wade*, we formulated the following general propositions regarding expert testimony:

> (1) A physician, as an expert witness, may give his opinion, including a diagnosis, based either on personal knowledge or observation or on information supplied him by others, including the patient, if such information is inherently reliable even though it is not independently admissible into evidence. The opinion, of course, may be based on information gained in both ways. (2) If his opinion is admissible the expert may testify to the information he relied on in forming it for the purpose of showing the basis of the opinion. *Penland v. Coal Co., supra*, 246 N.C. 26, 97 S.E. 2d 432.

*Id.* at 462, 251 S.E. 2d at 412.

We note first that defendant made no showing that the statements to which Dr. Van Fleet referred did in fact bear upon his ultimate diagnosis of defendant's mental condition. In this regard,

defendant further failed to request that the record reflect what the answer of the witness would have been. *Perfecting Serv. Co. v. Product Development & Sales Co.*, 259 N.C. 400, 131 S.E. 2d 9 (1963); 1 *Stansbury's North Carolina Evidence* § 26 (Brandis Rev. 1973). Thus, we are unable to ascertain whether the statements were admissible under *Wade, supra*, in the first instance, nor whether their exclusion, if admissible, was prejudicial. *Id.*

[6] Defendant also assigns as error the trial court's overruling his objections to questions asked by the district attorney which he now contends were irrelevant. The first of these exceptions is to the district attorney's question to Dr. Van Fleet regarding whether defendant was able, at the time of trial, to "function" in society. Over defendant's objection, the psychiatrist responded that he did not know what was meant by "function." Defendant here interposed only a general objection to the question, and a "general objection, if overruled, is no good, unless, on the face of the evidence, there is no purpose whatever for which it could have been admissible." 1 *Stansbury's, supra*, §27, and cases cited therein. Defendant has failed to demonstrate that this evidence would not be admissible for any purpose whatever. Moreover, the record discloses that Dr. Van Fleet did not, in fact, respond to the substance of the question but stated only that he was not sure what was meant by "function in society."

[7] Defendant's second exception to what he terms irrelevant evidence involves the following exchange:

> Q. Eight hour a day shifts on a week prior to the date of an occurrence when you've testified he didn't on a specific date, the eighteenth would have no bearing as to whether or not he knew the difference between right and wrong on that day. Is that what you're telling this jury?
>
> MS. SHUFORD: OBJECTION to the question.
>
> COURT: OVERRULED. Cross examination.

Obviously, the objection was directed to the form of the question. There was no objection to the evidence which was elicited by the question. Furthermore, there was no motion to strike any portion of the witness's answer to the challenged question. *See* 1 *Stansbury's, supra*, §27. "A specific objection, if overruled, will be effective only to the extent of the grounds specified." *Id.*

We are not inadvertent to the fact that these evidentiary rules may seem at times technical. However, they are bottomed on strong policy foundations and on the principle that the trial judge is present at the trial, and to him is entrusted the conduct of the trial. A party seeking to admit evidence, or objecting to the admission of evidence, should provide the trial court with a "timely and specifically defined opportunity to rule correctly." 1 *Stansbury's, supra*, §27. Only by enforcing these rules can we ensure that the judicial process proceed as efficaciously as possible and that appeals do not become merely an opportunity for counsel to "retry" the case.

[8]   Defendant next argues that the trial court erred in charging the jury regarding the possible verdicts in this case. In instructing specifically on one of the offenses involved, the judge charged that if the jury had a reasonable doubt as to one of the elements, it should return a "verdict of not guilty." Later in the charge, the court instructed that "all twelve minds must agree on a verdict of guilty or not guilty." Defendant maintains there was error since the judge failed to charge that the jury could find the defendant "not guilty by reason of insanity." For this proposition, defendant relies on *State v. Dooley*, 285 N.C. 158, 203 S.E. 2d 815 (1974). As the State points out, however, *Dooley* does not control in the instant case. The defendant there relied on self-defense, and the trial judge failed to include in his final mandate that the jury could find defendant not guilty by reason of self-defense. In the case at bar, the court not only included in the final mandate the possible verdict of not guilty by reason of insanity, but that verdict was included at the very beginning of the instructions, and again after the instructions on the elements of the offenses. This assignment is overruled.

[9]   Defendant's next argument relates to the following charge to the jurors:

Now, the court instructs you that a verdict is not a verdict unless and until all twelve jurors agree unanimously as to what your decision shall be; that is, all twelve minds agree on a verdict of guilty or not guilty.

Defendant argues that the court should have also instructed that individual jurors were not to surrender their own convictions solely in order to reach a verdict. We note, however, that defendant requested no instructions to this effect, and we are therefore not readily disposed to hear his complaint now. *See State v. Poole*, 25

N.C. App. 715, 214 S.E. 2d 774 (1975). Furthermore, the instruction as given is in accordance with the law of this State as set out in G.S. 15A-1235 as follows: "Before the jury retires for deliberation, the judge *must* give an instruction which informs the jury that in order to return a verdict, all 12 jurors must agree to a verdict of guilty or not guilty." [Emphasis added.] We find no error.

We have examined defendant's remaining assignments and find no prejudicial error warranting a new trial.

We find no error in the trial before Judge Friday, and thus the decision of the Court of Appeals is

Reversed.

Justice BROCK did not participate in the consideration or decision of this case.