Victor C. LUCAS, Appellant,

v.

UNITED STATES, Appellee.

No. 83–692.

District of Columbia Court of Appeals.

Argued April 2, 1985.

Decided Aug. 29, 1985.

Randy Hertz, Public Defender Service, Washington, D.C., with whom Mark S. Carlin and James Klein, Washington, D.C., were on brief, for appellant.

Wendy Bebie, Asst. U.S. Atty., Washington, D.C., with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell, Judith Hetherton and Barry M. Tapp, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before FERREN, BELSON and ROGERS, Associate Judges.

BELSON, Associate Judge:

Appellant was convicted of kidnapping while armed, D.C.Code §§ 22–2101, –3202 (1981 & 1984 Supp.), rape while armed, *id.* §§ 22–2801, –3202, carnal knowledge, *id.* § 22–2801, and two counts of sodomy, *id.* § 22–3502. Appellant challenges on appeal

the trial court's denial of his motion to bifurcate the merits and insanity phases of his trial. We affirm.

## I

A man, later identified by the complainant as appellant, abducted, sodomized and raped the complainant, a 14-year-old girl. Complainant was walking along a path on the afternoon of September 7, 1982, when appellant passed by. Appellant then suddenly approached complainant, held a piece of broken glass to her throat, and pulled her into the nearby woods. Complainant resisted by screaming and hitting appellant. She stopped resisting after appellant stuck his fingers into her throat and told her to shut up. Appellant directed complainant to pretend that they were boyfriend and girlfriend. When complainant saw a group of young male friends in the woods, she furtively tried to tell them to get her mother. When the boys again encountered appellant and complainant, appellant again instructed her to act as if they were boyfriend and girlfriend. As the boys approached, appellant threatened that if they came nearer he would kill complainant. The boys left to summon help.

Appellant forced complainant to run farther into the woods, where he directed her to lie down. After placing his hat over her face, he sodomized her. At the sound of sirens, appellant ran with complainant until they came to the basement of a vacant building. In the basement, which was extremely dark, appellant stated "since I'm going to get accused of doing it, I might as well do it." Appellant raped complainant twice and again sodomized her. Appellant thereafter permitted complainant to leave. She ran until she met some police officers. Their initial search failed to locate appellant.

Complainant described appellant to the police as between 5′9″ and 6′, with a husky build, brown eyes, and a complexion similar to complainant's. The assailant had a round face, a wide nose, medium lips, a chipped tooth, and a short mustache. He wore a blue hat, a blue jacket with a horse insignia, blue jeans, and "All-Stars" tennis shoes.

Two days after the offense, a detective showed 10 slides to complainant at the police station. When she saw appellant's picture, complainant told the detective that the body, build and, face looked familiar, but that he was not the assailant. After leaving the station, however, complainant told her godmother that she thought appellant was her attacker. Complainant rejected her godmother's suggestion that she promptly inform the detective, preferring to check the pictures carefully the next time. Complainant explained at trial that she did not identify appellant initially because she was trying to visualize her assailant without a sweaty face.

The next day, another detective brought 12 pictures to complainant's house. Complainant selected appellant's photograph and stated that from the side he looked just like her assailant.

On September 10, complainant attended a line-up. Complainant asked if the man that she had selected from the photographs would be in the line-up. A detective answered that he might be. Complainant immediately identified appellant at the line-up, stating that she could not forget the person who had assaulted her.

## II

Appellant filed several pretrial motions, including a motion to suppress complainant's identification and a motion to bifurcate the merits and insanity phases of the trial. We will discuss the suppression hearing because it afforded the trial judge an opportunity to assess the strength of appellant's misidentification defense, a circumstance that is important to our disposition of this appeal. In support of that motion, appellant argued that complainant's identification should be suppressed because only appellant figured in all three identification sessions; only he met complainant's general description; his photo-

graph stood out because it was new; the police indicated that the person she had selected from the photographs might be in the line-up, and complainant initially did not identify appellant. Although he acknowledged complainant's ordeal was fairly lengthy, appellant pointed out at the two critical times complainant's face was either covered or she was in the pitch dark basement.

The trial judge heard at length the testimony of complainant concerning the entire course of events during which he had the opportunity to observe appellant and the circumstances under which she identified him. He heard the testimony of a detective as well. The trial judge then denied appellant's motion to suppress complainant's identification. He noted that there is "some degree of suggestiveness when a police officer indicates to a witness that a suspect's picture is among the photographs in an array or in a line-up." He observed, however, that such a statement may be relatively harmless, as the victim could be expected to realize that she would not be asked to view the line-up if a suspect were not present. The court concluded that the identification procedures were not unduly suggestive and appeared to indicate that complainant's identification was reliable. On appeal appellant does not contest this ruling.

The trial judge initially agreed to grant appellant's motion for bifurcation. Upon reflection and further argument, however,

he denied the motion.[1] In light of the court's decision to proceed with a unitary trial, appellant announced that he would not contest the issues of whether complainant was criminally assaulted and whether appellant was the assailant.[2] Trial proceeded. The jury rejected his insanity defense and found appellant guilty on all counts.

### III

Appellant contends that the trial court abused its discretion in denying the motion to bifurcate the trial into separate phases on the merits and insanity. We disagree.

■ Bifurcation occurs when the court divides the trial into two parts: a trial on the merits, and a trial on the insanity defense. During the merits phase the government must bear its usual burden of proving that the defendant committed all the elements of the crime charged. The trial judge then "submit[s] to the jury issues raised by the not guilty plea." *Holmes v. United States*, 124 U.S.App.D.C. 152, 154, 363 F.2d 281, 283 (1966). If the jury reaches a not guilty verdict, the insanity defense becomes moot. If, however, the jury returns a guilty verdict, the trial proceeds to the insanity phase.[3]

■ A defendant may be prejudiced by "the simultaneous trial on the pleas of insanity and 'not guilty.'" *Holmes*, 124 U.S.App.D.C. at 153, 363 F.2d at 282. The bifurcation procedure serves to mitigate two types of prejudice that might occur in

1. Appellant originally requested that the court impanel a separate jury for each stage in addition to bifurcating the trial, citing *United States v. Bennett*, 148 U.S.App.D.C. 364, 373–74, 460 F.2d 872, 891–92 (1972) (trial court in its discretion may impanel two juries), and *United States v. Taylor*, 167 U.S.App.D.C. 62, 68, 510 F.2d 1283, 1289 (1975) (discussing desirability of a bifurcated trial with two separate juries). Appellant withdrew his request for separate juries. Thus, we need address only the issue of bifurcation before one jury.

2. Appellant also offered to enter into stipulations as to the facts of the case. The court permitted the prosecution to go forward with its proof, tailored to the limited issue of whether

appellant was not guilty by reason of insanity or was guilty of the offenses.

3. When one jury sits for both phases, the court must permit a separate voir dire with respect to the insanity defense. *Jackson v. United States*, 404 A.2d 911, 925–26 (D.C.1979). Alternatively, the court in its discretion may impanel a new jury to determine the issue of insanity. *Harris v. United States*, 377 A.2d 34, 39 (D.C.1977) (broad court discretion to impanel two juries); *see Parman v. United States*, 130 U.S.App.D.C. 188, 192, 399 F.2d 559, 563 (no absolute legal right to new jury for insanity phase), *cert. denied*, 393 U.S. 858, 89 S.Ct. 109, 21 L.Ed.2d 126 (1968).

a unitary trial: "(1) prejudice to a defendant's insanity defense arising from the evidence on the merits, and (2) prejudice to a defendant's defense on the merits arising from the insanity evidence." *Jackson v. United States,* 404 A.2d 911, 925 (D.C. 1979). The burden is upon the defendant to demonstrate the need for a bifurcated trial, *Higgins v. United States,* 130 U.S. App.D.C. 331, 333, 401 F.2d 396, 398 (1968), by making a "substantial proffer both on the merits and the issue of responsibility." *Kleinbart v. United States,* 426 A.2d 343, 354 (D.C.1981). When the defense on the merits is insubstantial or nonexistent, however, a unitary trial does not prejudice the defendant. When the defendant decides to forego an insubstantial defense on the merits, he or she does "not sacrific[e] anything of value." *Contee v. United States,* 133 U.S.App.D.C. 261, 263, 410 F.2d 249, 251 (1969); *accord Harried v. United States,* 128 U.S.App.D.C. 330, 333, 389 F.2d 281, 284 (1967).

■ The trial court has broad discretion in deciding whether to bifurcate a trial. *Holmes,* 124 U.S.App.D.C. at 154, 363 F.2d at 283. The presence of a substantial insanity defense does not, of itself, require bifurcation. *See Harried,* 128 U.S.App. D.C. at 333, 398 F.2d at 284 (broad discretion of trial judge to weigh substantiality of and prejudice to the defense on merits). Unless the defendant demonstrates a "substantial claim" for bifurcation, the trial court does not abuse its discretion by denying the motion. *Jackson,* 404 A.2d at 925. Of course, where the government presents relatively weak evidence on the merits, a failure to bifurcate will usually amount to an abuse of discretion. *See United States v. Ashe,* 138 U.S.App.D.C. 356, 427 F.2d 626 (1970) (evidence of requisite corroboration "very 'thin'", and court imposed insanity defense over defendant's objection; abuse of discretion to conduct unitary trial).

On the other hand, as the Circuit Court of Appeals observed in *Harried,* "[w]here there is no 'defense' beyond putting the Government to its proof, we fail to see how there can be prejudice to the defense on the merits due to failure to bifurcate." 128 U.S.App.D.C. at 333, 389 F.2d at 284. We especially note the context of that statement—the appellant there " 'staked all on the insanity defense' " and his testimony denying guilt substantially corroborated the prosecution's evidence of guilt. *Accord Contee v. United States,* 133 U.S. App.D.C. at 262–63, 410 F.2d at 250–51 (appellant in *Harried* had no substantial defense on the merits other than a bare denial). Here, however, the defense explained how it planned to undermine the government's proof of an essential part of its case—identification. Thus, appellant informed the court that his not guilty plea signified more than a bare denial.

Appellant argues here that the trial court abused its discretion in denying bifurcation in that it overlooked the presence of a substantial defense on the merits. In considering what is meant by the term "substantial defense", we find some guidance in opinions in this jurisdiction reviewing claims of ineffective assistance of counsel. Prior to the Supreme Court's ruling in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1982), this court required that an appellant, to succeed on such a claim, must demonstrate that " 'there [had] been gross incompetence of counsel and this [had] in effect blotted out the essence of a *substantial defense.*' " *Johnson v. United States,* 413 A.2d 499, 502 (D.C.1980) (emphasis added) (quoting *Bruce v. United States,* 126 U.S.App.D.C. 336, 339–40, 379 F.2d 113, 116–17 (1967); *Angarano v. United States,* 312 A.2d 295, 298 (1973). In order to demonstrate a substantial defense in those cases, an appellant was not required to show that testimony or evidence that erstwhile counsel had failed to adduce was "likely to produce an acquittal." *Miller v. United States,* 479 A.2d 862, 872 n. 6 (D.C.1984). Rather, a reversal was warranted when the lapse by counsel "materially lessen[ed] the opportunity for acquittal." *Asbell v. United States,* 436

A.2d 804, 811 (D.C.1981). "The loss of *highly credible* impeachment material, which may have been sufficient to cast a reasonable doubt on the government's evidence, blots out a substantial defense." *Johnson*, 413 A.2d at 505.

Guided by the foregoing explications of the term substantial defense, we find no abuse of discretion in the trial court's denial of bifurcation here. The trial judge, who reserved his decision on the motion until after the hearing on the identification procedures, was in a unique position to determine that the defense lacked highly credible grounds for impeachment of complainant.[4] The judge heard complainant testify at the hearing on direct and on cross-examination. *Accord Godfrey v. United States* 454 A.2d 293, 303 (D.C.1982) (affirming determination by trial court that recantation was not credible when judge witnessed demeanor). Although she did not initially select appellant's photograph, complainant offered a cogent explanation for her hesitation. The court rejected the contention that complainant was unduly swayed in her identification of appellant at the line-up. Even though complainant's view of appellant was limited at two junctures, she had a lengthy opportunity to observe appellant at close range and in daylight. Having heard the motion to suppress identification, the trial judge thereafter denied the motion to bifurcate.[5]

■ We observe that "[i]n cases of doubt, the question should be resolved in favor of bifurcation where the evidence on criminal responsibility does not significantly overlap the evidence on the merits and where the same jury can fairly determine both issues." *Contee*, 133 U.S.App. at 262, 410 F.2d at 250. In the circumstances of this case, however—where the trial judge denied the motion to bifurcate after a pretrial hearing on suggestivity and reliability of the complainant's identification and after a thoughtful discussion of the case law with counsel—the trial judge's decision not to bifurcate was consistent with a proper exercise of discretion.

In reaching this conclusion, we reject appellant's subsidiary argument that the trial court erroneously employed an "affirmative evidence" requirement: *viz.* that a "substantial defense" could never be shown where the defense on the merits consists merely of cross-examination of the government's witnesses.[6] *See Johnson v.*

4. We point out that the denial of a motion to suppress an identification is not, in itself, a finding by the court that the defense could not at trial cast a reasonable doubt on the identification by questioning the witness about her opportunity to observe and the procedures leading up to the identification. *Cf. Hampton v. United States*, 318 A.2d 598, 600 (D.C.1974) (denial of motion to suppress identification as result of unduly suggestive procedure does not preclude cross-examination at trial on identification procedures; weight of identification, but not admissibility, still at issue).

5. We understand the trial court's denial to have been based on the lack of prejudice to appellant's insubstantial defense on the merits. The court asked defense counsel to identify the prejudice to the defense on the merits. The court also stated repeatedly that the defense in the case "is one of insanity." *See Harried*, 128 U.S. App.D.C. at 333, 389 F.2d at 284 (defendant "staked all on the insanity defense"). The court concluded that if it granted bifurcation in this case it "would grant a bifurcated trial wherever there's an insanity defense raised."

6. Appellant directs our attention to the court's statements, such as:

I don't know what evidence you've got to proffer me, sir, what evidence you can cross examine the Government witnesses, but what is it that you are going to present in the way of affirmative defense on the merits?

[T]he prejudice that we talk about in granting bifurcation does more suitably arise in not just a blanket, general denial, but ... whether there is ... a prejudice that arises in fact in presenting defenses.

I don't know what defense is going to be proffered other than the Government's burden to meet its guilt beyond a reasonable doubt, and I don't know any other defense. that's forward.

[To suggest that this case requires bifurcation] is to say that the Government is merely required to prove guilt beyond a doubt, and regardless of what evidence we put on to show misidentification or anything else, when we are not going to put on any evidence, that we must have bifurcation.

*United States*, 398 A.2d 354, 365 (D.C. 1979) (abuse of discretion for trial court to take into account irrelevant factors). Appellant could not meet such a requirement, for he hoped to raise doubt about complainant's identification through cross-examination of her and other prosecution witnesses, and by pointing out the lack of real and scientific evidence implicating appellant as the assailant. Appellant did not plan to offer his own testimony, call witnesses, or adduce any other evidence.

A complete reading of the hearing transcript demonstrates, contrary to appellant's argument, that the trial court did not require the defense to proffer affirmative evidence in order to demonstrate the existence of a substantial defense on the merits. The court explicitly relied on two cases when it denied appellant's motion for bifurcation, *Jackson v. United States*, 404 A.2d 911 (D.C.1979), and *Johnson v. United States*, 413 A.2d 499 (D.C.1980). The opinions in both indicated that a substantial defense might be shown even though the defense did not proffer affirmative evidence. In *Jackson*, this court concluded that the "defense's serious challenge to the government's circumstantial evidence" presented a substantial defense on the merits. 404 A.2d at 925. There is no indication in our opinion that the defense proffered any evidence as to the merits to the trial court at the time the court was considering bifurcation. The trial court's citation here to *Jackson* at the end of the several colloquies concerning bifurcation suggests the court was not requiring a proffer of defense evidence on the merits as a prerequisite to bifurcation.

The court's reliance on *Johnson* underscores the point. In *Johnson*, we undertook to describe the nature of a substantial defense in the context of a claim of ineffective assistance of counsel. 413 A.2d at 504–05. We explained that a:

"substantial defense" ... is not limited to an affirmative defense or the presentation of an alibi defense. A defense may be predicated upon disproving an element of the crime charged ... or simply discrediting the testimony of the prosecution witness.... A substantial defense would be lost, for example, if defense counsel failed to to use available prior perjury convictions to impeach the sole prosecution witness, or to use prior inconsistent statements which sharply undercut the witness' credibility. Such failures could "blot out" a substantial defense even where it would be entirely appropriate for the defense to put on no evidence at all of its own.

*Id.* (citations omitted). The trial court here, by specifically relying on *Jackson* and *Johnson*, indicated that it rejected a blanket rule that the existence of a substantial defense may be established only by an affirmative proffer of evidence by the defense.

We are unpersuaded, therefore, by appellant's contention that the trial court refused bifurcation because of appellant's inability to proffer affirmative evidence in his defense, and instead are satisfied that the court did not abuse its discretion in denying bifurcation.

IV

Appellant assigns as error several instances of improper comments by the prosecutor in his closing arguments. Appellant contends that the prosecutor stated several times that appellant showed no remorse for his crime, theorized that the crime was unacceptable to appellant's family; invoked sympathy for the victim; and incorrectly predicated that, if found not guilty by reason of insanity, appellant would seek release from St. Elizabeth's Hospital in 50 days.

We need not discuss at length the extent to which these statements constitute error, for even if we assume error, we hold that these comments did not cause substantial prejudice to appellant. *See, e.g., Arnold v. United States*, 467 A.2d 136, 137 (D.C. 1983); *Dyson v. United States*, 418 A.2d

127, 132 (D.C.1980); *see also Villacres v. United States*, 357 A.2d 423, 428 (D.C. 1976) (court balances "gravity of the misconduct, its direct relationship to the issue of innocence or guilt, and the effect of specific corrective instructions by the trial court, if any, against the weight of the evidence of appellant's guilt").

 The prosecutor's prediction that appellant would seek early release from St. Elizabeth's Hospital is the only comment that requires discussion. At the suggestion of the trial judge, defense counsel responded by explaining to the jury that appellant would not ask to be released in 50 days if institutionalized, and that he would not be released until he could prove to a judge that he is not likely to harm himself or others. Furthermore, the court instructed the jury that if found not guilty by reason of insanity, appellant would remain at St. Elizabeth's until he proves to the court by the preponderance of the evidence that he is not likely to injure himself or others. *See Harris v. United States*, 377 A.2d 34, 39 (D.C.1977) (effect of prosecutor's comment about likely early release from St. Elizabeth's Hospital was error but was mitigated by jury instruction).

As to the weight of the evidence of appellant's guilt, we observe that appellant's insanity defense was significantly weakened at trial. The psychiatric testimony of appellant's experts was contradicted by the government's experts. Moreover, as those witnesses pointed out, appellant's conduct during the assault—directing complainant to act as his girlfriend, threatening the boys, running away at the sound of sirens, covering complainant's face, stating that since he would be accused of rape he might as well commit rape—was at odds with his insanity defense. We therefore hold that appellant's insanity defense was not substantially prejudiced by the prosecutor's statements.

*Affirmed.*