STATE OF NORTH CAROLINA v. MICHAEL LEE WRIGHT, JR.

No. COA10-1251

(Filed 21 June 2011)

**1. Constitutional Law— double jeopardy—one course of conduct—multiple victims**

Defendant's constitutional right against double jeopardy was not violated where he was sentenced for two attempted murder convictions consolidated with two assault convictions arising from a single course of conduct with multiple shots and two victims.

**2. Constitutional Law— confrontation clause—defendant not present at in-chambers conference—harmless error**

The trial court's error in excluding defendant from an in-chambers conference prior to the sentencing hearing was harmless where the conference was recorded, defendant was represented by counsel at the conference, he was given an opportunity to be heard and to make objections at the sentencing hearing, and the trial court reported the class level for each offense and any aggravating or mitigating factors on the record in open court.

**3. Sentencing— restitution—greater than evidence—remanded**

A restitution order was remanded for amendment where the record on appeal supported only $15,400 rather than the $15,760 awarded.

Appeal by defendant from judgments and order entered 20 January 2010 by Judge Jay D. Hockenbury in Sampson County Superior Court. Heard in the Court of Appeals 10 March 2011.

*Roy Cooper, Attorney General, by David J. Adinolfi, II, Special Deputy Attorney General, for the State.*

*Brock, Payne & Meece, P.A., by C. Scott Holmes, for defendant.*

THIGPEN, Judge.

Defendant Michael Lee Wright, Jr., appeals from eight convictions arising out of a shooting at Moore Cuts Barbershop in Clinton, North Carolina and from a restitution order. The three principal issues on appeal are whether the trial court: (1) punished Defendant multiple times for the same transaction in violation of his constitutional right

STATE v. WRIGHT

[212 N.C. App. 640 (2011)]

against double jeopardy, (2) violated Defendant's constitutional right to be present by conducting sentencing proceedings outside of his presence, and (3) erred by ordering restitution without proper evidence. Because there was a $360 discrepancy between the amount of restitution ordered, $15,760, and the amount of restitution supported by the evidence, $15,400 in awards from the Crime Victims Compensation Commission, we remand the restitution order for the trial court to amend the order accordingly. For all other issues, we find no error.

On 16 February 2008, Corey Bennett, an old friend of Defendant, was standing in front of Moore Cuts Barbershop in Clinton, North Carolina when he received a call on his cell phone from Defendant. Mr. Bennett said that he could hardly hear the conversation, but Defendant said something about "a baby or a baby momma[.]" Mr. Bennett testified that while he was on the phone, he saw a small, white four-door car. Mr. Bennett recognized the driver as his ex-girlfriend, Terry Oates, and also saw Donte Singleton, Deangelo Jacobs ("DJ"), and Defendant in the car. Mr. Bennett had seen the car earlier at a traffic light, and then saw it make a U-turn and follow him for a while. As Mr. Bennett turned to go into the barbershop, he heard gun shots, the glass window broke, and he dove to the floor. Mr. Bennett testified that he did not see who was shooting. Mr. Bennett saw Marcus London, a barber, and another man inside of the barbershop, and he knew Mr. London was hurt because he saw blood on the floor.

Henry Moore, the owner of Moore Cuts, had stepped out of his barbershop to get a soda. On the way back, he saw Mr. Bennett standing in front of the barbershop on his cell phone. Mr. Moore then saw a white Kia drive toward Moore Cuts. Mr. Moore saw four people in the car, including a young woman driving that he did not recognize and three men that he recognized. Mr. Moore recognized Donte Singleton in the front passenger seat, Defendant in the back passenger seat, and DJ behind the driver. As the Kia pulled in front of Moore Cuts, Mr. Moore heard someone shout, "[t]here he is," and he saw Defendant lean out of the window and start shooting. Mr. Moore stated, "I looked dead at them, they looked dead back at me, and I paused because I was shocked it was broad daylight and somebody shooting." Mr. Moore heard at least five shots fired, and he saw Mr. Bennett dash into the barbershop when the shooting started. Mr. Moore called 911, and Mr. Bennett told him Mr. London had been shot in the head.

Mr. London was working inside the barbershop when he was shot on the left side of his head. As a result of being shot, he was in the hospital for approximately two months and is permanently disabled in his right arm and leg.

Defendant and Donte Singleton were arrested in Greensboro, North Carolina on 10 April 2008. The white Kia Optima was found at the residence of Regina Brown, after her uncle, Donte Singleton, arrived in the vehicle with a woman and two men and left the car in the backyard.

Defendant was charged with attempted first degree murder of Mr. London, attempted first degree murder of Mr. Bennett, assault with a deadly weapon with intent to kill inflicting serious injury on Mr. London, assault with a deadly weapon with intent to kill Mr. Bennett, discharging a firearm into occupied property inflicting serious bodily injury, two counts of discharging a firearm into occupied property, and discharging a firearm within city limits. The jury found Defendant guilty on all counts and found aggravating factors. The trial court consolidated the convictions into three groups and sentenced Defendant to three consecutive sentences in the presumptive range of 220-273 months, 180-225 months, and 34-50 months imprisonment. The trial court also ordered Defendant to pay $15,760 in restitution to North Carolina Department of Crime Control and Public Safety, Division of Victim's Compensation Services. Defendant appeals.

On appeal, Defendant argues the trial court (I) erroneously punished Defendant multiple times for the same transaction in violation of his constitutional right against double jeopardy, (II) violated Defendant's constitutional right to be present when it conducted sentencing proceedings outside of his presence, and (III) erroneously ordered restitution without proper evidence.

## I. Double Jeopardy

[1] Defendant first argues the trial court erroneously punished him multiple times for the same transaction in violation of his constitutional right against double jeopardy. Specifically, Defendant contends there was one series of shots constituting one assault; therefore, it violated double jeopardy to sentence him and punish him for multiple assaults. We disagree.

Our standard of review for double jeopardy claims is *de novo*. *State v. Hagans*, 188 N.C. App. 799, 804, 656 S.E.2d 704, 707 (citation omitted), *disc. review denied*, 362 N.C. 511, 668 S.E.2d 344 (2008).

"The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution protects against multiple punishments for the same offense. The North Carolina Constitution provides similar protection." *State v. Washington*, 141 N.C. App. 354, 368, 540 S.E.2d 388, 398 (2000) (citing U.S. Const. amend. V.; N.C. Const. art. I, § 19), *disc. review denied*, 353 N.C. 396, 547 S.E.2d 427 (2001). However, "[i]t is elementary that a defendant may be charged with more than one offense based on a given course of conduct." *State v. Ward*, 301 N.C. 469, 476, 272 S.E.2d 84, 88 (1980). A defendant may be properly charged with two separate and distinct offenses that arise out of a single course of conduct. *Id.*

In this case, the trial court consolidated Defendant's convictions of attempted murder of Mr. London, assault with a deadly weapon with intent to kill on Mr. London, and discharging a firearm into occupied property inflicting serious bodily injury into one sentence of 220 to 273 months imprisonment. The court also consolidated his convictions of attempted murder and assault with a deadly weapon with intent to kill with respect to Mr. Bennett into one sentence of 180 to 225 months imprisonment. Defendant contends "the single assaultive conduct cannot support two attempted murder convictions consolidated with two assault convictions."

Defendant cites *State v. Dilldine*, 22 N.C. App. 229, 206 S.E.2d 364 (1974), and *State v. Brooks*, 138 N.C. App. 185, 530 S.E.2d 849 (2000), *appeal dismissed and disc. review denied*, 357 N.C. 253, 582 S.E.2d 612 (2003), in support of his argument that the series of five shots fired in this case constitute one assault. However, Defendant's reliance on *Dilldine* and *Brooks* is misplaced because both of those cases involved a defendant charged with two separate counts of assault for shooting one victim multiple times in one continuous incident. The instant case involved two victims. Therefore, we find it analogous to *State v. Washington*, 141 N.C. App. at 369-70, 540 S.E.2d at 399, in which this Court held that the "defendant was properly charged with two separate and distinct *offenses as to each victim*, felonious assault and attempted murder, even though the offenses both arose out of a single course of conduct." (Emphasis added). Following our holding in *Washington*, we conclude Defendant was properly charged and convicted of two separate and distinct offenses of attempted murder and assault as to each victim, even though the offenses arose out of a single course of conduct.

## II. Right to be Present

**[2]** In his next argument on appeal, Defendant contends the trial court violated his right to be present by conducting sentencing proceedings outside Defendant's presence with no waiver of the right by Defendant. This contention has no merit.

Our Supreme Court has explained a defendant's right to be present:

The Confrontation Clause in Article I, Section 23 of the North Carolina Constitution guarantees an accused the right to be present in person at every stage of his trial. This right to be present extends to all times during the trial when anything is said or done which materially affects defendant as to the charge against him.

*State v. Workman*, 344 N.C. 482, 497, 476 S.E.2d 301, 309 (1996) (citations and quotation marks omitted). The right to be present at all critical stages of the prosecution is subject to a harmless error beyond a reasonable doubt standard of review. *Id.* "An in-chambers conference is a critical stage of a defendant's trial . . . at which he has a constitutional right to be present." *State v. Exum*, 343 N.C. 291, 294, 470 S.E.2d 333, 335 (1996) (citation and quotation marks omitted). "[N]otwithstanding an accused's right to be present, certain violations of this right may be harmless if such appears from the record. An error is harmless beyond a reasonable doubt if it did not contribute to the defendant's conviction." *State v. Ferguson*, 145 N.C. App. 302, 309, 549 S.E.2d 889, 894 (citations and quotation marks omitted), *disc. review denied*, 354 N.C. 223, 554 S.E.2d 650 (2001).

In the present case, the trial court conducted an in-chambers conference before the sentencing hearing to discuss the class level of each offense and any aggravating or mitigating factors. The trial court also asked each attorney how they wanted to handle the sentencing hearing, whether they planned to present any further evidence, and whether there was any restitution. The in-chambers conference was recorded, and all of the attorneys were present but Defendant was not. After the in-chambers conference, the trial court conducted a sentencing hearing before the jury and in the presence of Defendant. At the sentencing hearing, Defendant stipulated to his prior record level, presented testimony from two witnesses and evidence of mitigating factors, made two motions to dismiss, and objected to the State's request for restitution. The trial court summarized the class level of each offense and any aggravating or mitigating factors before sentencing Defendant and ordering him to pay restitution.

Our Supreme Court has found harmless error under similar circumstances. In *State v. Brogden*, 329 N.C. 534, 542, 407 S.E.2d 158, 163 (1991), our Supreme Court held that "the error in conducting an informal meeting in chambers to discuss the jury instructions, outside the presence of defendant, prior to the formal charge conference held in open court, was harmless beyond a reasonable doubt" because the court subsequently entered the matter into the record in open court, in the presence of the defendant, where both counsel for the State and for the defendant made their legal arguments and took exceptions. Similarly, in *State v. Wise*, 326 N.C. 421, 433, 390 S.E.2d 142, 149-50, *cert. denied*, 498 U.S. 853, 111 S.Ct. 146, 112 L. Ed. 2d 113 (1990), our Supreme Court found harmless error where a charge conference was held out of the presence of the defendant and was not recorded, but the defendant was represented by counsel at the conference, and the trial court subsequently announced the proposed instructions on the record and gave defense counsel an opportunity to be heard.

In the instant case, the in-chambers conference was recorded, Defendant was represented by counsel at the conference, Defendant was given an opportunity to be heard and to make objections at the sentencing hearing, and the trial court reported the class level for each offense and any aggravating or mitigating factors on the record in open court. We find *Brogden* and *Wise* dispositive, and conclude that the error in excluding defendant from the in-chambers conference prior to the sentencing hearing was harmless beyond a reasonable doubt.

## III. Restitution

[3] In his final argument on appeal, Defendant contends the trial court erred by ordering restitution without sufficient evidence to support the restitution amount. We disagree.

On appeal, we review *de novo* whether the restitution order was "supported by evidence adduced at trial or at sentencing." *State v. Shelton*, 167 N.C. App. 225, 233, 605 S.E.2d 228, 233 (2004) (citation omitted). "The amount of restitution must be limited to that supported by the record[.]" N.C. Gen. Stat. § 15A-1340.36 (2009). Unsworn statements made by the prosecutor are insufficient to support the amount of restitution ordered. *State v. Wilson*, 340 N.C. 720, 727, 459 S.E.2d 192, 196 (1995) (citation omitted). However, when "there is some evidence as to the appropriate amount of restitution, the recommendation will not be overruled on appeal." *State v. Hunt*, 80 N.C. App. 190, 195, 341 S.E.2d 350, 354 (1986).

In this case, contrary to Defendant's assertion, the restitution amount was not based solely upon the unsworn statements of the prosecutor. Rather, the prosecutor introduced into evidence two awards from the Crime Victim's Compensation Commission. The State presented the awards to the trial court, and the court summarized the awards as follows: "I see $12,400 that goes to BioNest, Inc. Then another $3,000 to Mr. Marcus London to pay for physician expenses." The court overruled Defendant's objection to the restitution amount and admitted the awards from the Crime Victim's Compensation Commission as State's Exhibits 1 and 2 at the sentencing hearing.[1] The trial court also admitted the restitution worksheet prepared by the State, ordered Defendant to pay $15,760 in restitution to the North Carolina Department of Crime Control and Public Safety, and found Defendant jointly and severally liable for $3,360 of the restitution amount.

"In the absence of an agreement or stipulation between defendant and the State, evidence must be presented in support of an award of restitution." *State v. Buchanan*, 108 N.C. App. 338, 341, 423 S.E.2d 819, 821 (1992). Our courts have found both documentation and victim testimony regarding the amount of restitution to be sufficient evidence to support an award of restitution. *See State v. Canady*, 153 N.C. App. 455, 461-62, 570 S.E.2d 262, 266-67 (2002) (affirming the trial court's award of restitution because "[t]here was both testimony and documentation showing that the victims had already accumulated $680.00 in treatment bills" and testimony that the victims were still undergoing treatment as a result of defendant's actions); *State v. Price*, 118 N.C. App. 212, 221, 454 S.E.2d 820, 826 (1995) (holding that the trial court's recommendation of restitution was not error where the victim testified that "he had to purchase a special van costing $19,900 and that he had incurred $1,000 in medical expenses"); *Hunt*, 80 N.C. App. at 195, 341 S.E.2d at 354 (finding no error in the trial court's recommendation of restitution where the victim testified regarding the amount of the hospital and doctor bills).

The North Carolina Crime Victims Compensation Commission was established by statute, N.C. Gen. Stat. § 15B-3 (2009), and has the power to award compensation for "criminally injurious conduct[.]" N.C. Gen. Stat. § 15B-4(a) (2009). To commence a claim, a claimant must file an application for award with the Director of the Crime Victims Compensation Commission, N.C. Gen. Stat. § 15B-7 (2009),

---

1. State's Exhibits 1 and 2 at the sentencing hearing are not included in the record on appeal.

and must attach to the application all itemized medical and funeral bills related to the injuries received from the crime. See Victim Compensation Application, State of North Carolina Victim and Justice Services, http://www.nccrimecontrol.org/div/vcs/cvca.pdf. When the Crime Victims Compensation Commission awards a claim for compensation, "[t]he Director shall pay award payments directly to the service provider on behalf of the claimant. Eligible out-of-pocket costs borne by the claimant shall be paid directly to the victim only if such costs can be documented and verified." N.C. Gen. Stat. § 15B-16 (2009). We conclude that an award from the Crime Victims Compensation Commission constitutes sufficient evidence to support an order of restitution.

Here, the awards from the Crime Victims Compensation Commission were admitted into evidence, and although they are not part of the record on appeal, the trial court indicated that the awards showed "$12,400 . . . to BioNest, Inc." and "$3,000 to Mr. Marcus London to pay for physician expenses." These awards from the Crime Victim's Compensation Commission are sufficient evidence to support the restitution award. We note, however, that the trial court ordered restitution in the amount of $15,760, when the trial court's description of the awards from the Crime Victim's Compensation Commission totaled only $15,400. See State v. Moore, —— N.C. App. ——, ——, 705 S.E.2d 797, 803 (2011) ("Ordering restitution in an amount greater than the amount supported by the evidence violates the requirement of N.C. Gen. Stat. § 15A-1340.36(a)") (emphasis in original). Although the restitution worksheet requests $15,760, the record lacks competent evidence to support that figure. See State v. Blount, —— N.C. App. ——, ——, 703 S.E.2d 921, 927 (2011) (providing that "[a] restitution worksheet, unsupported by testimony, documentation, or stipulation, is insufficient to support an order of restitution") (citations and quotation marks omitted). The awards from the Crime Victims Compensation Commission are the only competent evidence related to restitution, and because they are not a part of the record on appeal, we must rely on the trial court's description of the awards; thus, only an amount of $15,400 is supported. Therefore, we remand the restitution order for the trial court to amend the order accordingly.

REMANDED IN PART, NO ERROR IN PART.

Judges STROUD and HUNTER, JR. concur.